## SAM TROTT v. STATE.

No. A-9173.    July 2, 1937.
(70 Pac. 2d 118.)

Jean R. Reed and W. A. Woodruff, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Sanford Martin, Co. Atty., for the State.

BAREFOOT, J. The defendant was charged by information in the district court of Cherokee county with the crime of murder. He was convicted of manslaughter in the first degree; his punishment left to the court, who sentenced him to serve a term of 25 years in the penitentiary. The deceased was Lora D. Cone.

Upon this case being called for trial, the jury panel was exhausted with eleven jurors in the box. It was agreed by the defendant and the state, with the approval of the trial court, that the case should proceed to trial with eleven jurors, and the defendant waived his right in open court to have a full panel of twelve jurors.

For the first time on appeal the question is now raised that notwithstanding the waiver by defendant and agreement in open court to be tried by eleven jurors, the verdict of the jury was void by reason thereof, notwithstanding said agreement and waiver.

This question has been before the courts many times. The authorities are in hopeless conflict. In deciding this

question there is nothing left to do but read these conflicting decisions, examine the reasoning and logic of each, and see which best applies to the surroundings of this state, taking into consideration the constitutional provisions and laws of this state, and the decisions that have heretofore been rendered by the courts of Oklahoma. Two of the earlier and leading cases upholding the doctrine that the defendant cannot waive the right to be tried by a jury of twelve, are the cases of Cancemi v. People, 18 N. Y. 128, and William Hill v. People, 16 Mich. 351. These cases give the best reasoning supporting the above contention, and is the reasoning given to support later cases upholding this doctrine. These arguments are that to be so tried by other than twelve jurors is to be tried by a tribunal unknown to the common law and the Constitution. A distinction is drawn between a waiver in a civil case and a criminal case. In a civil case it is held that it is a waiver of only individual rights, which are within the individual control, and which they may part with at their pleasure, hence there is a manifest propriety in the law allowing such consent to have the effect designed by it in civil cases. This right being based upon constitutional or statutory provisions that "a jury trial may be waived by the parties in all civil cases in the manner prescribed by law." But it is argued that in criminal cases the prosecution involves public wrongs and as stated in 3 Blackstone's Com. (2d Ed.) 45:

"A breach and violation of public rights and duties would affect the whole community, considered as a community, in its social and aggregate capacity."

To the end that similar offenses may be prevented, and that no one has a right by his own voluntary act to surrender his liberty or part with his life. The state and the public have an interest in the preservation of the

liberties and lives of its citizens and will not allow them to be taken without "due process of law," and as expressed by Blackstone, vol. 4, p. 189, when he says: "The king has an interest in the preservation of all of his subjects."

It is further argued "if a deficiency of one juror might be waived why a deficiency of eleven might not be; and if it is difficult to see why upon the same principle the entire panel might not be dispensed with, and the trial committed to the court alone." And in the Cancemi Case it is said:

"It would be a highly dangerous innovation, in reference to criminal cases, upon the ancient and invaluable institution of trial by jury, and the constitution and laws establishing and securing that mode of trial, for the court to allow of any number short of a full panel of twelve jurors, and we think it ought not to be tolerated.

"The opinion of the judges of the Court of King's Bench in the case of Lord Dacres, tried in the reign of Henry the VIII for treason, strongly fortifies the conclusion above expressed. One question in that case was, whether the prisoner might waive a trial by his peers and be tried by the country; and the judges agreed that he could not, for the statute of Magna Charta was in the negative, and the prosecution was at the King's suit. (Kelyng's R., 59.) Woodeson, in his Lectures (vol. 1, 346), says, the same was again resolved, on the arraignment of Lord Audley, in the seventh year of the reign of Charles I, and that the reason was that the mode of trial was not so properly a privilege of the nobility as part of the indispensable law of the land, like the trial of commoners by commoners, enacted, or rather declared, by Magna Charta. In 3 Inst., 30, the doctrine is stated that 'a nobleman cannot waive his trial by his peers and put himself upon the trial of the country, that is, of twelve freeholders; for the statute of Magna Charta is that he must be tried per pares, and so it was resolved in Lord Dacres' case.' "

In the case of Hill v. People, supra, in upholding the doctrine that the defendant cannot waive a full panel of twelve jurors, the court says:

"The true theory, we think, is that the people, in their political or sovereign capacity, assume to provide by law the proper tribunals and modes of trial for offenses, without consulting the wishes of the defendant as such; and upon them, therefore, devolves the responsibility, not only of enacting such laws, but of carrying them into effect, by furnishing the tribunals, the panels of jurors, and other safeguards for his trial, in accordance with the constitution which secures his rights. The government—the officers of the law—bring the jurors into the box; he has no control over the matter, who shall be summoned or compose the panel, upon which he may exercise the right of the challenge; and the prosecution must see that electors only are placed there, as the law requires.

"But independent of all theories, and as a practical question, we think there would be great danger in holding it competent for a defendant in a criminal case, by waiver or stipulation, to give authority which it could not otherwise possess, to a jury of less than twelve men, for his trial and conviction; or to deprive himself in any way of the safeguards which the constitution has provided him, in the unanimous agreement of twelve men, qualified to serve as jurors by the general laws of the land. Let it once be settled that a defendant may thus waive this constitutional right, and no one can foresee the extent of the evils which might follow; but the whole judicial history of the past must admonish us that very serious evils should be apprehended, and that every step taken in that direction would tend to increase the danger. One act or neglect might be recognized as a waiver in one case, and another in another, until the constitutional safeguards might be substantially frittered away. The only safe course is to meet the danger in limine, and prevent the first step in the wrong direction.

"It is the duty of courts to see that the constitutional rights of a defendant in a criminal case shall not be violated, however negligent he may be in raising the objection. It is in such cases, emphatically, that consent should not be allowed to give jurisdiction. * * *

"We are aware there are some cases in England, and in this country, which appear to hold a different view. But to this extent we cannot regard them as sound in principle or safe in practice."

Supporting the rule that the defendant has a right to waive the jury panel and be tried by a less number of jurors are the early cases of State v. Kaufman, 51 Iowa, 578, 2 N. W. 275, 33 Am. Rep. 148, and Commonwealth v Dailey, 12 Cush. (Mass.) 80, and Commonwealth v. Beard, 48 Pa. Super. 319. These cases give the reasoning and logic for the rule in favor of the defendant's right to waive and be tried by less than twelve jurors.

In the case of State v. Kaufman, supra, the Supreme Court of Iowa says:

"That a defendant in a criminal action by silence may waive the benefit of a statutory provision was clearly recognized. There are several other decisions which recognize the same principle. Hughes v. State, 4 Iowa, 554; State v. Ostrander, 18 Iowa, 435; State v. Reid, 20 Iowa, 413; and State v. Felter, 25 Iowa, 67. It must therefore be regarded as the settled doctrine in this state that a defendant in a criminal action, with the consent of the state and court, may waive a statute enacted for his benefit.

"The Constitution provides that 'the right of trial by jury shall remain inviolate, * * * but no person shall be deprived of life, liberty or property without due process of law.' Article 1, § 9, Code, 770. That the jury contemplated by the foregoing provision should consist of twelve competent persons, will be conceded. The ques-

tion for determination is, whether a defendant in a criminal action, with the consent of the state and court, can waive the foregoing constitutional provision and is bound thereby. The first impression would be, we think, that a constitutional provision would be waived as well as a statute. Both in this respect have equal force, and were enacted for the benefit and protection of persons charged with crime. If one can be waived, why not the other? A conviction can only be legally obtained in a criminal action upon competent evidence; yet, if the defendant fails at the proper time to object to such as is incompetent, he cannot afterwards do so. He has a constitutional right to a speedy trial, and yet he may waive this provision by obtaining a continuance. A plea of guilty ordinarily dispenses with a jury trial, and it is thereby waived. This, it seems to us, effectually destroys the force of the thought that 'the state (the public) have an interest in the preservation of the lives and the liberties of the citizens, and will not allow them to be taken away without due process of law.' The same thought is otherwise expressed by Blackstone, vol. 4, 189, that 'the King has an interest in the preservation of all his subjects.' It matters not whether the defendant is in fact guilty, the plea of guilty is just as effectual as if such was the case. Reasons other than the fact that he is guilty may induce a defendant to so plead, and thereby the state may be deprived of the services of the citizen, and yet the state never actively interferes in such case, and the right of the defendant to so plead has never been doubted. He must be permitted to judge for himself in this respect. So in the case at bar. The defendant may have consented to be tried by eleven jurors because his witnesses were there present and he might not be able to get them again, or that it was best he should be tried by the jury as thus constituted. Why should he not be permitted to do so? Why hamper him in this respect? Why restrain his liberty or right to do as he believed to be for his interests? Whatever rule is adopted affects not only the defendant, but all others similarly situated, no matter how much they desire to avail themselves of the right to do what the defendant

desires to repudiate. We are unwilling to establish such a rule. It may be said that if one juror may be dispensed with so may all but one, or that such trial may be waived altogether and the trial had to the court. This does not necessarily follow.

"It will be time enough to determine such questions when they arise. Certain it is that the right to dispense with one or more jurors cannot be exercised without the consent of the court and state, and it may safely, we think, be left to them as to when or to what extent it may be exercised. We, however, may remark, without committing ourselves thereto, that it is difficult to see why a defendant may not, with the consent of the court and state, elect to be tried by the court. Should such become the established rule, many changes of venue based on the prejudice of the inhabitants of the county against the defendant might be obviated. * * * The foregoing views are sustained by Commonwealth v. Dailey, 12 Cush. (Mass.) 80; Murphy v. Commonwealth, 1 Metc. (Ky.) 365; Tyra v. Com., 2 Metc. (Ky.) 1. The crime charged in these cases was a misdemeanor, but in the first case this fact possessed no significance. The ruling is based on principles applicable to all criminal actions. We are unable to see how it is possible to draw a distinction in this respect between misdemeanors and felonies, because the constitution does not recognize any such distinction. The contrary conclusion was reached in Cancemi v. People, 18 N. Y. 128; Allen v. State, 54 Ind. 461; and Bell v. State, 44 Ala. 393. In neither of these cases was the question largely considered. Substantially they all seem based on the thought that 'it would be a highly dangerous innovation, in reference to criminal cases, upon the ancient and invaluable institution of trial by jury, and the constitution and law establishing and securing that mode of trial, for the court to allow of any number short of a full panel of twelve jurors, and we think ought not to be tolerated.' Cancemi v. People, before cited. This would have been much more convincing and satisfactory if we had been informed why it would be 'highly dangerous' and should 'not be toler-

ated,' or at least something which had a tendency in that direction. For if it be true, as stated, it certainly would not be difficult to give a satisfactory reason in support of the strong language used."

In the case of Commonwealth v. Dailey, supra, 12 Cush. (Mass.) 80, the Chief Justice of the Supreme Court of Massachusetts says:

"But supposing the law has duly provided that a jury of twelve men shall be impaneled to try an indictment, the evidence is all in, and a juror dies, or becomes insane,—for we may state the exigency so strong, that it is impossible to proceed with the whole panel,—whether it is legal for the accused, to consent to proceed without the juror withdrawn; or to state the same question in a little different form, whether he may stipulate before him, on the record, that he will take no exception to such irregularity, and if he does, whether the court cannot legally act upon it, and carry such stipulation into effect. We think they can.

"It may be said, perhaps, that a criminal case is no trial of a party's rights; that it is for the interest of the public, in the administration of public justice, that no man shall be convicted or acquitted, otherwise than according to the course provided by law. Still, even in the administration of criminal law, many legal provisions are made for the security and benefit of the accused, and it may be for his interest and benefit to waive them. He may in the first place waive a trial altogether, and plead guilty. He may consent to admit legal instruments offered on the other side, without legal proof of execution, on the belief, perhaps, that the evidence will be beneficial rather than injurious to him. He is supposed to understand his own rights, or be aided by counsel competent to advise and act for him. In the case supposed, the accused may have been successful in laying before the jury all his evidence, which he may fear he cannot again obtain. A long time may elapse before he can have another

trial, and it is important to him to have an early decision, on many accounts.

"In the admission and rejection of evidence, in many points in the conduct of a trial, parties and their counsel, we think, may be safely allowed to judge as to what they will insist on and what they will waive. Having so done, and taken their chance for a verdict, it would be inconsistent with ordinary good faith and fair dealing to turn around and insist on legal exceptions, which they had pledged themselves to the court that they would not take. Fox v. Hazelton, 10 Pick. [Mass.] 275. So, if a party has ground of exception to a juror, and knows it when the jury is impaneled, by not taking the objection he waives it. Davis v. Allen, 11 Pick. [Mass.] 466 [22 Am. Dec. 386]; Hallock v. Franklin County, 2 Metc. [Mass.] 558. When an agreement is made by the attorney in a case, not to bring a writ of error, the court will take notice of it and enforce it specifically as a step in the judicial proceeding. Wright v. Nutt, 1 T. R. 338. These are civil actions, not exactly in point; but they declare a principle which has a strong bearing. In a case of felony, where a party had a right by law to have time to ascertain the indifferency of jurors, by consenting that the question should be tried by the court, he waived his right to except. People v. Rathbun, 21 Wend. [N. Y.] 509. The court in that case, say, the principle is the same in felony, as that which binds in civil cases. Any agreement deliberately made, any plain assent express or implied, on the orderly conduct of a writ, or even an agreement to admit a material fact upon the trial, cannot be revoked. They cite the maxim of Lord Coke, 2 Inst. 183, Quilibet potest renunciare juri pro se introducto, as a maxim of universal application. He may; waive any matter of form or substance. excepting only what may relate to the jurisdiction of the court. A prisoner who defends by counsel, and silently acquiesces in what they agree to, is bound in the same manner as any other principal by the act of his agent. The principle that the right of trial by jury is placed on the footing of a lex pro se introducta, and that

the benefit of it may therefore be relinquished, is strongly declared by the Supreme Court of the United States, in Bank of Columbia v. Okely, 4 Wheat. 235 [4 L. Ed. 559]. In a recent English case, after a trial for conspiracy had commenced, a juror stated that he had been one of the grand jury who found the bill. The public prosecutor offered to withdraw the juror and proceed with eleven, which the counsel for the accused declined, and the trial proceeded. After conviction a motion was made for a new trial, on the ground that one of the grand jury was on the panel. The court overruled it, on the ground that after the exception became known to the accused, by proceeding with the trial, he waived it. The Queen v. Sullivan, 8 Ad. & El. 831. See also the opinion of Mr. Justice Thompson in the case of United States v. Rathbone, [Fed. Cas. No. 16,121] 2 Paine, [578] 538."

"But it is asked, if consent will authorize a trial before eleven jurors, why not before ten, or six, or one. It appears to us, that it is a good answer to say, that no departure from established forms of trial in criminal cases can take place without permission of the judge, and no discreet judge would permit any such extravagant or wide departure from these salutary forms as the question supposes, nor any departure, unless upon some unforeseen or urgent exigency."

In the case of Commonwealth v. Beard, supra, the Supreme Court of Pennsylvania, speaking of the question of waiver by defendant, says:

"The conflict is irreconcilable. All that remains at this day is to follow those of the decisions whose reasons commend themselves as the better ones and whose spirit is congenial to the policy and spirit of our own law." The court in this opinion further says: "In truth, as appears by the best considered cases on both sides of the question, what the accused really consents to is simply not to object to an irregularity, not indeed in the original constitution of the tribunal appointed for his trial, but in the continuing composition of one of its parts, occurring, by

reason of unavoidable circumstances, at a subsequent stage of the proceeding, after the jurisdiction of the tribunal had attached, and existing at the rendition and reception of the verdict. He does so at a time and under conditions when perfectly free to choose whether so to consent or not, without any liability to prejudice by reason of a refusal to consent. Having for reasons of his own given his consent and taken the chances of the result, he should, upon every analogy in our law and upon the most obvious grounds of good faith and justice be precluded from retracting it when disappointed in the result."

Without citing further cases in support of and against this proposition, we desire to call attention to the case of Patton et al. v. United States, 281 U. S. 276, 50 S. Ct. 253, 254, 74 L. Ed. 854, being a case arising in Oklahoma and appealed to the Eighth Circuit Court of Appeals (which at that time had jurisdiction of appeals from the federal courts of this state) and by that court certified to the Supreme Court of the United States, where, in an elaborate opinion by Justice Sutherland, the question involved in the instant case was discussed at great length and a most careful review is made of the cases, both sustaining and those in opposition to the question involved in the instant case. The court, after a careful review of all of these cases, answers the certified question in the affirmative. The question being as follows:

"After the commencement of a trial in a federal court before a jury of twelve men upon an indictment charging a crime, punishment for which may involve a penitentiary sentence, if one juror becomes incapacitated and unable to further proceed with his work as a juror, can defendant or defendants and the government through its official representative in charge of the case consent to the trial proceeding to a finality with 11 jurors, and can defendant or defendants thus waive the right to a trial and verdict by a constitutional jury of 12 men?"

This case will also be found in 70 A. L. R. 263, and on page 279 there is an annotation upon the question, "Right to consent to trial of criminal case before less than twelve jurors; and effect of consent upon jurisdiction of court to proceed with less than twelve," which cites the cases from all the states upon this important question.

In the Patton Case Justice Sutherland gives the most convincing argument of the right of defendant to waive this constitutional or statutory right to be tried by a full panel of twelve jurors, when he says:

"It is difficult to see why the fact, frequently suggested, that the accused may plead guilty and thus dispense with a trial altogether, does not effectively disclose the fallacy of the public policy contention; for if the state may interpose the claim of public interest between the accused and his desire to waive a jury trial, a fortiori it should be able to interpose a like claim between him and his determination to avoid any form of trial by admitting his guilt. If he be free to decide the question for himself in the latter case, notwithstanding the interest of society in the preservation of his life and liberty, why should he be denied the power to do so in the former? It is no answer to say that by pleading guilty there is nothing left for a jury to try, for that simply ignores the question, which is not what is the effect of the plea, the answer to which is fairly obvious, but, in view of the interest of the public in the life and liberty of the accused, can the plea be accepted and acted upon, or must the question of guilt be submitted to a jury at all events? Moreover, the suggestion is wholly beside the point, which is that public policy is not so inconsistent as to permit the accused to dispense with every form of trial by a plea of guilty, and yet forbid him to dispense with a particular form of trial by consent.

"The truth is that the theory of public policy embodies a doctrine of vague and variable quality, and, un-

less deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a prejudicial determination, if at all, only with the utmost circumspection. The public policy of one generation may not, under changed conditions, be the public policy of another.

"It may be conceded, at least generally, that under the rule of the common law the accused was not permitted to waive trial by jury, as generally he was not permitted to waive any right which was intended for his protection. Nevertheless, in the Colonies such a waiver and trial by the court without a jury was by no means unknown, as the many references contained in the brief of the Solicitor General conclusively show. But this phase of the matter we do not stop to consider, for the rule of the common law, whether exclusive or subject to exceptions, was justified by conditions which no longer exist; and as the Supreme Court of Nevada well said in Reno Smelting, Milling & Reduction Works v. Stevenson, 20 Nev. 269, 279, 21 Pac. 317, 320, 4 L. R. A. 60, 19 Am. St. Rep. 364: 'It is contrary to the spirit of the common law itself to apply a rule founded on a particular reason to a case where that reason utterly fails,—cessante ratione legis, cessat ipsa lex.'

"The maxim seems strikingly opposite to the question here under review. Among other restraints at common law, the accused could not testify in his own behalf; in felonies he was not allowed counsel (IV Sharswood's Blackstone, 355, note 14), the judge in such cases occupying the place of counsel for the prisoner, charged with the responsibility of seeing that the prisoner did not suffer from lack of other counsel (Id.); and conviction of crime worked an attaint and forfeiture of official titles of inheritance, which, as Judge Aldrich points out (quotation supra), constituted in a large sense the reason for withholding from accused parties the right of waiver.

"These conditions have ceased to exist and with their disappearance justification for the old rule, no longer

rests upon a substantial basis. In this respect we fully agree with what was said by the Supreme Court of Wisconsin in Hack v.. State, 14 Wis. 346, 351, 352, 124 N. W. 492, 494, 45 L.R.A. (N.S.) 664: 'The ancient doctrine that the accused could waive nothing was unquestionably founded upon the anxiety of the courts to see that no innocent men should be convicted. It arose in those days when the accused could not testify in his own behalf, was not furnished counsel, and was punished, if convicted, by the death penalty, or some other grievous punishment out of all proportion to the gravity of his crime. Under such circumstances it was well, perhaps, that such a rule should exist and well that every technical requirement should be insisted on, when the state demanded its need of blood. Such a course raised up a sort of a barrier which the court could utilize when a prosecution was successful which ought not to have been successful, or when a man without money, without counsel, without ability to summon witnesses, and not permitted to tell his own story, had been unjustly convicted but yet under the ordinary principles of waiver as applied to civil matters, had waived every defect in the proceedings.

" 'Thanks to the humane policy of the modern criminal law, we have changed all these conditions. The man now charged with crime is furnished the most complete opportunity for making his defense. He may testify in his own behalf; if he be poor, he may have counsel furnished him by the state, and may have his witnesses summoned and paid for by the state; not infrequently he is thus furnished counsel more able than the attorney for the state, in short the modern law has taken as great pains to surround the accused person with the means to effectively make his defense as the ancient law took pains to prevent that consummation. The reasons which in some sense justified the former attitude of the courts have therefore disappeared, save perhaps in capital cases, and the question is, Shall we adhere to the principle based upon conditions no longer existing? No sound reason occurs to us why a person accused of a lesser crime or misde-

meanor, who comes into court with his attorney, fully advised of all his rights, and furnished with every means of making his defense, should not be held to waive a right or privilege for which he does not ask, just as a party to a civil action waives such a right by not asking for it.' The view that power to waive a trial by jury in criminal cases should be denied on grounds of public policy must be rejected as unsound. * * *

"Although we reject the general view of the dissenting opinion that a waiver of jury trial is not valid in any criminal case, we accept the foregoing statement as entirely sound. We are unable to find in the decisions any convincing ground for holding that a waiver is effective in misdemeanor cases, but not effective in the case of felonies. In most of the decisions no real attempt is made to establish a distinction, beyond the assertion that public policy favors the power of waiver in the former, but denies it in the latter because of the more serious consequences in the form of punishment which may ensue. But that suggested differentiation, in the light of what has now been said, seems to us more fanciful than real. The Schick Case, it is true, dealt with a petty offense, but, in view of the conclusions we have already reached and stated, the observations of the court (195 U. S. 65, pp. 71, 72, 24 S. Ct. 826, 828 [49 L. Ed. 99, 1 Ann. Cas. 585]) have become equally pertinent where a felony is involved."

To our mind the reasoning supporting the doctrine that the defendant has the right to waive and be tried by a jury of eleven men instead of a full panel of twelve is the more logical, and especially is this true under the Constitution and statutes of this state, and the former decisions of this court in construing those provisions. Article 2, section 19, of our Constitution provides:

"The right of trial by jury shall be and remain inviolate, and a jury for the trial of civil and criminal cases in courts of record, other than county courts, shall consist of twelve men; * * * in criminal cases less than felo-

nies, three-fourths of the whole number of jurors concurring shall have power to render a verdict. In all other cases the entire number of jurors must concur to render a verdict."

Article 2, § 20, provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed."

Article 7, § 20 provides:

"In all issues of fact joined in any court, all parties may waive the right to have the same determined by jury; in which case the finding of the judge, upon the facts, shall have the force and effect of a verdict by jury."

In construing these various provisions, this court has heretofore given them a liberal construction, and we find no good reason for a change at this late date. In the early case of In re Opinion of the Judges, 6 Okla. Cr. 18, 115 Pac. 1028, Judge Doyle, in rendering an opinion for the then Governor, His Excellency, Honorable Lee Cruce, after citing the Oklahoma Statutes as follows, Snyder's Statutes, § 2275, now Oklahoma Statutes 1931, § 2222 (21 Okla. St. Ann. § 707), held:

"The statute providing (section 2275, Snyder's Sts. 1909) that upon a plea of guilty of murder the court shall determine whether the defendant shall be punished by death or by imprisonment for life at hard labor is constitutional and valid, and where a defendant who has been informed against for a capital crime in a court of competent jurisdiction pleads guilty, such court is authorized to pronounce judgment and sentence against such defendant according to law. In such a case, there is no issue to be submitted to a jury."

In the case of In re Wilkins, 7 Okla. Cr. 422, 115 Pac. 1118, this court upheld the right of a jury of six men to

try a defendant in a misdemeanor case in a superior court of this state.

In the case of Ex parte J. C. King, 42 Okla. Cr. 46, 274 Pac. 682, this court held that the defendant had the right to waive a jury of twelve in a felony case and have the trial court hear the evidence and pronounce sentence, and also, in the case of Starr v. State, 5 Okla. Cr. 440, 115 Pac. 356, 368, the court says:

"Where a constitutional right in a criminal cause is largely for the benefit of the accused or in the nature of a personal privilege, the law is well settled that an accused may waive such right."

And in the case of Ex parte Hollingsworth, 46 Okla. Cr. 353, 287 Pac. 840, Judge Edwards, in a habeas corpus case, passed upon the identical question involved here. In this case the defendant was charged with murder and was convicted of manslaughter as in the instant case, and the court, in the syllabus says:

"In the trial of a felony case after a jury had been impaneled and the state had introduced its evidence, and it became necessary that one of the jurors be excused, the state and the defendant, in open court, with the consent of the court, stipulated and agreed that the case should proceed with the eleven jurors remaining. Held that the defendant could waive his constitutional right to have a panel of twelve jurors, and, that the verdict and judgment of the jury so constituted is not void."

The defendant offered three requested instructions, which were refused by the court, and to which defendant excepted. The record does not reveal that any exception was taken to the general instructions given by the court. We have carefully examined the instructions given and are of the opinion that they fully and clearly cover the law of murder and manslaughter in the first degree, in

accordance with the facts in this case. The requested instructions are covered in the general instructions, and this no doubt was the reason the court refused to give them. The defendant not having excepted to the general instructions, he would not be entitled on appeal to object to them according to the decisions of this court except as to fundamental errors, but we have examined them as stated above and find no error which would deprive the defendant of any substantive right.

The facts in this case reveal that the defendant and deceased had lived on adjoining farms in Cherokee county for many years. A controversy arose over the location of the line fence between their farms, and as to which of them owned the wire on the fence located thereon. This controversy had continued for some time and the defendant on the day before the killing, with the assistance of two hired hands, had torn down a part of the fence and was building a new one. On the morning of the 9th day of March, 1935, the deceased came to where the hired hands of the defendant were repairing the fence. Some words were spoken and the deceased sent one of the defendant's grandsons, who was also present, to the house to tell his grandfather to come down there. Upon receiving this information the defendant armed himself with a pistol and proceeded to where deceased was. There was a direct conflict between the witnesses as to what occurred at the time of the difficulty. The witnesses for the state, and most of them were less disinterested and were not related to either of the parties, two of them were working for the defendant, testified that after certain conversation between the defendant and deceased, the deceased put his hands on some wire that had been rolled up and that defendant said: "God dam your honory soul, get your hands off my wire," or "Keep your hands off of my wire";

that deceased took his hands off the wire, and stepped back a few steps when the defendant drew his pistol and shot the deceased in the face. These witnesses testified that the deceased made no effort to secure a gun. They also testified that when deceased fell to the ground, his wife and others attempted to go to deceased and the defendant forbid them from doing so and threatened them by saying: "I told you to stop. Stop or I will kill the last damn one of you." The eyewitnesses for the defendant who consisted of himself, his wife and two grandsons, while admitting the shooting of deceased by defendant, swore the deceased was making an attempt to go into his bosom as if to secure a gun and that while doing this the defendant demanded of him: "Don't do that," and "I jerked my gun and shot."

The evidence revealed that a neighbor to both parties was a deputy sheriff and that he soon came and examined the deceased and found below his jacket, attached to his pants, a pistol. He testified that the deceased was wearing two shirts and a lumber jacket and that the jacket was buttoned from the bottom up for several buttons and that the gun was under the jacket and that he had to reach in and take two jerks to get it out. Other witnesses corroborated this statement.

Without stating the evidence in detail, which we do not consider necessary, it was as stated above conflicting. The jury heard the evidence, saw the witnesses and observed their demeanor upon the witness stand. After hearing this evidence, they agreed that the defendant was guilty, and so found. We agree with their decision. If the evidence of the state was true, the jury would have been justified had they found the defendant guilty of murder, but they only saw fit to find him guilty of man-

slaughter in the first degree. The court assessed the punishment as it had a right to do under the law.

Finding no error, we are of the opinion that the judgment of the district court of Cherokee county should be affirmed, and it is so ordered.

DAVENPORT, P. J., and DOYLE, J., concur.