## JACK WAINSCOTT v. STATE.

No. A-1373.    Opinion Filed February 1, 1913.

(129 Pac. 655.)

1. **LARCENY—Evidence.** In a prosecution for larceny of live stock, the circumstantial evidence is held sufficient to support the verdict and judgment, and that no reversible error was committed on the trial.

2. **TRIAL—Weight of Evidence.** The credibility of the testimony of the defendant and witnesses testifying in his behalf is the exclusive province of the jury to determine, and, although such testimony may be uncontradicted and not directly impeached, when there are facts and circumstances in evidence tending to lessen the probability that such testimony is true, the jury may give it such weight as they deem proper, even to the extent of wholly disregarding the same.

(Syllabus by the Court.)

*Appeal from District Court, Grady County;*
*Frank M. Bailey, Judge.*

Jack Wainscott was convicted of larceny, and brings error. Affirmed.

*F. E. Riddle,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen. (*R. E. Gish,* of counsel) for the State.

· DOYLE, J.  The plaintiff in error was convicted of the crime of grand larceny, and sentenced to imprisonment in the penitentiary for a period of one year and a day.  An appeal was properly perfected.

Three assignments of error relied upon for a reversal of the judgment are, in effect, that the evidence is insufficient to sustain the verdict and judgment, and that the court erred in the giving and refusing of certain instructions to the jury.  The information is in the ordinary form, charging the larceny of sixteen head of hogs, of the value of $160, in Grady county, on or about the 19th day of December, 1910.

The evidence upon which the defendant was convicted was of an entirely circumstantial nature.  From the evidence it appears that the firm of Anderson & Girard had in their possession a large number of hogs in their lots near Ninnekah, Grady county, and about ten miles northeast of where the defendant resided; that on the night of the 19th of December, sixteen head were stolen; that four of these were red Duroc Jersey hogs that were snooted, and one of them had part of the nose hanging to one side in a peculiar manner.  The stolen hogs were traced from the point where a portion of the fence inclosing the pens had been taken down to a bridge about two miles west, where the tracks showed that a wagon had been backed up under it, evidently for the purpose of loading the hogs.  At this point the hog tracks and the tracks of men driving them stopped and the track of the wagon went south from the bridge, about two miles, where it was lost.  Thursday following the Monday night when the hogs were stolen, Hodge Bailey, a deputy sheriff, and Oscar Dryden, who were searching for the missing hogs, found two red hogs in the pen of the defendant, the description of which corresponded in every particular with the description of two of the stolen hogs.  When Anderson, one of the owners, with the witnesses Dryden, Bailey, and Lintz, went on Saturday to the defendant's pen, these two hogs were missing.  They then made search for the missing hogs, and, following the tracks of a hack which led from the defendant's pen through a field to a point about half a mile below in the timber, they found the entrails of

three hogs buried, and the place covered over with leaves. A little of the hide which had not been removed corresponded with the color of the missing hogs seen in the defendant's pen Thursday by Dryden and Bailey.

On behalf of the defendant, Willis Rider, his father-in-law, and George Rider, his brother-in-law, testified that they were with the defendant at his hogpens December 22d, and there saw two red hogs that George Rider had sold to the defendant a few weeks before. The defendant testified on his own behalf that he had bought two hogs from his brother-in-law, George Rider; that several of his hogs were snooted; that he did not know anything about the hack tracks from his pen to where the entrails were buried, nor did he know anything about any hogs having been killed there; that he saw from his house somebody looking into his hogpens on Thursday, and heard that day about the hogs being stolen a few days before from Anderson & Girard. The defendant also introduced evidence tending to support an alibi. Walter Moore testified that on December 19th he went to Chickasha with the defendant, that they drove from there to the defendant's home where they arrived about 10 o'clock p. m., and that he stayed there that night. Jim Hahn testified that he was working for the defendant at that time, and that he returned home on the night of December 19th from Chickasha; that Walter Moore was with him, and stayed there that night.

We think that it was clearly a question of fact for the jury to say whether the red hogs found by Dryden and Bailey in the defendant's pen were the property of Anderson & Girard, or of the defendant. On the following Saturday these two red hogs were gone from the defendant's pen, and no explanation of their disappearance is made. Under these circumstances, the jury were justified in connecting their disappearance with the finding of the entrails buried and concealed on the premises of the defendant. Where the evidence is circumstantial, and the circumstances are such as to reasonably justify an inference of guilt, the weight and value of such testimony are exclusively for the jury. It is only where the evidence obviously does not warrant the inference of guilt that the court will interfere. Otherwise the weight of

circumstantial evidence, and the inference to be drawn from it in almost every case, would finally be determined by the appellate court. We think a verdict of a jury based upon circumstantial evidence comes to us as any other verdict, and, unless we can say that the inference of guilt drawn from the evidence was wholly unwarranted, we cannot interfere.

It is also argued by the learned counsel that the testimony of the defendant and the witnesses testifying in his behalf in support of the alibi and explanatory of the incriminating circumstances is uncontradicted and unimpeached, and for this reason he assumes that the jury should have believed their testimony. The credibility of the testimony of the defendant and the witnesses testifying in his behalf is the exclusive province of the jury to determine, and, although such testimony may be uncontradicted and not directly impeached, when there are facts and circumstances admitted and proven tending to lessen the probability that such testimony is true, the jury may give it such weight as they deem proper, even to the extent of wholly disregarding the same. The rule as stated in Cyc. is as follows:

"The jury are not bound to believe testimony because it is uncontradicted and not directly impeached. The jury may consider the inherent improbabilities of the statements of the witness, and they may be of such a character as to justify them in disregarding his testimony, although uncontradicted by direct testimony. He may be contradicted by the facts that he states as completely as by adverse testimony, and there may be so many omissions and improbabilities in his evidence as to discredit his whole story." (12 Cyc. 486.)

The instruction objected to, given with reference to circumstantial evidence, is as follows:

"Evidence has been offered in this case of a circumstantial nature; that is, circumstantial evidence. You are instructed that the law recognizes circumstantial evidence, and that the same is competent for your consideration, and when such evidence is full and complete is ofttimes as persuasive as direct and positive evidence. But in this connection you are instructed that it is not sufficient that the circumstances merely tend to show or point to the guilt of the defendant, but, to sustain a conviction upon circumstantial evidence, the evidence must be so full, complete, and persuasive as to exclude every reasonable hypothesis other

than that of the guilt of the defendant. But when such circumstances are full and complete, and convince your mind of defendant's guilt beyond a reasonable doubt, then such evidence is sufficient to warrant a conviction."

It is contended that this instruction tells the jury that evidence has been offered in the case of a circumstancial nature, when the court should have told the jury that the state relied solely upon circumstantial evidence for a conviction, and that the court erred in refusing to give the following instruction requested by the defendant:

"Gentlemen of the jury, you are instructed that in this case the state relies upon circumstantial evidence for a conviction; and, while such evidence is legal and competent, yet, before you can convict the defendant, the circumstances must not only point to the guilt of the defendant, but the circumstances must be so full, complete, and convincing as to exclude every other reasonable hypothesis other than that of the guilt of the defendant, and, if you have a reasonable doubt as to whether such circumstances are sufficient, you will acquit the defendant. Refused and exception allowed.

"Frank M. Bailey, Judge."

The modification of the instruction objected to as made in the instruction requested was not material, and, while the instruction requested may be in better form, the refusal of the court to give it does not constitute reversible error.

There being no reversible error, the judgment of the district court of Grady county is affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.