## TED GERNER v. STATE.

No. A-9211. March 25, 1938.
(77 P. 2d 1190.)

For former opinion, see 62 Okla. 206, 70 P. 2d 1112.

Norman H. Wright and George Miller, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. The information in this case filed in the district court of Muskogee county, January 3, 1936, in substance charged that Ted Gerner in said county on or about the 30th day of March, 1935, did feloniously take, steal, and carry away without the knowledge or consent of the owner, Glynn Campbell, one 1934 Model Chevrolet coach, of the value of $400. Upon arraignment the defendant entered a plea of not guilty.

The record shows that when the case was called for trial, April 7, 1936, the defendant waived his right to a jury trial and it was agreed by and between the parties to try the case to the court. That on April 8th, the defendant filed a motion for new trial on the ground of "error of the court in overruling the defendant's demurrer to the evidence of the state, and that the verdict is contrary to law and the evidence." On April 17th, a motion for new trial was heard and overruled. Thereupon the court rendered judgment and sentenced the defendant, Ted Gerner, to serve a term of five years in the state penitentiary at McAlester, and to pay the costs.

From this judgment the defendant appealed, but no brief was filed nor appearance made in this court, and the case was submitted on the record. The judgment was affirmed. Gerner v. State, 62 Okla. Cr. 206, 70 P. 2d 1112. Motion for rehearing was duly filed in this court, and after the hearing a rehearing was granted. Various errors are assigned and argued.

An examination of the record discloses that no objection was made to any ruling of the trial court in the admission or exclusion of testimony. The rule is well settled that only those questions can be considered on appeal, unless jurisdictional, which were raised in the trial court on exceptions taken, and unless incorporated in the motion for a

new trial, will not be considered on appeal. Dew v. State, 11 Okla. Cr. 581, 149 P. 917.

Upon the record before us the only question presented is the sufficiency of the evidence to support the conviction.

The testimony shows that Glynn Campbell, living in Muskogee, on March 30, 1935, owned a 1934 Model Chevrolet coach; he parked it on Okmulgee street, Muskogee, in front of the Plaza Hotel and went into Nick's Cafe; it was raining and he remained in the cafe about an hour; when he came back, his car was gone. He immediately notified the police. The car was found in Oklahoma City in possession of the police department. Mr. Campbell identified the car by various special marks. He also had the title to the car. When the car was taken from him it had a 1934 license place tag; when he found it in Oklahoma City it had a 1935 license on it. The carburetor had been changed and that the serial number, motor number, and license number were all completely changed. He testified he did not know of his own knowledge who stole the car.

Fred Walker testified that he had known the defendant for four or five years; that the defendant was a garage mechanic; that about August 6, 1935, witness was arrested and taken to the Oklahoma City police station, where he made a written statement; that about three weeks before said time the defendant asked him to take the Chevrolet Six and drive it until the man who owned it called for it, and the defendant drove the Chevrolet out to his place and delivered it to him; that he kept it for two weeks, then the defendant called on him and told him to leave it in the parkway of the Brown Hotel, 1414 North Broadway, Oklahoma City; that he complied with said request and left the car in the rear of said hotel; that while he had the car a man, whom he later learned was Bill Wakefield, came for the car, but he did not let him have it; that the defendant did not tell him he owned the car, but merely told him he could use it until the man called for it.

J. W. Wakefield testified he had lived in Oklahoma City for 28 years; he identified a statement he made at the police station on April 5, 1935, at that time he was living at the Brown Hotel, 1414 North Broadway; that the defendant is an automobile mechanic and they worked in the same garage 321 West Reno; that one night shortly after dark, in the early part of July, 1935, the defendant came to the Brown Hotel and asked him to take a ride; that he thought he was alone, but when they got out to the old Buick car, a man in the driver's seat was introduced to him as Charley, whom he later identified as Frank Mabry; that they drove to Fifth and Stiles streets, and stopped behind a black 1935 Chevrolet coach, and the defendant asked him to favor him by driving it to the Brown Hotel and parking it in the rear and keep the same for him until he called for it; that he did as requested and parked the said car back of the Brown Hotel; that the defendant called him later that night and said he would see him the following day; that some time after the defendant told him to sell the car.

He further testified that he and the defendant rented a garage at 3712 North Western avenue, May 28, 1935; that the defendant loaned him $15 to pay the first month's rent, and also loaned him the tools; that they both worked there, each collecting for his own work; that he did not know that any of the numbers had been changed on said car until informed by the officers.

James R. Sullivan testified he was special agent of the Automobile Protection Bureau, and made some investigation of the theft of Glynn Campbell's automobile. Was present April 4, 1935, when the officers took charge of the car, located in a parking yard in the rear of the Broadway Central Hotel. They took it to the Grand Avenue Garage and held it for the police department; that he inspected the motor number and the secret motor number and found that they had been changed, and fictitious numbers placed over the original numbers, and also the transmission number,

and the car did not bear the serial plate, and the rear axle number of the car had been changed. Thereafter Mr. Campbell came to Oklahoma City and identified this car as the car that was stolen from him.

T. R. Husted testified that he was a lieutenant in the police officers in Oklahoma City, and he arrested the defendant on a charge of larceny of a 1935 black Chevrolet coach that was stolen at Guthrie, and for a car that was stolen from Chickasha, and for the Campbell car in question; that he knew of Frank Mabry; that he is now dead; that he did not know whether or not the defendant had been tried in the Guthrie and Grady county cases.

At the close of the evidence for the state a demurrer was interposed on the ground that the evidence was insufficient to warrant a conviction. After hearing the argument of counsel, the court overruled the demurrer.

The defendant, as a witness in his own behalf, testified that he came to Oklahoma City in May, 1930; that he met Bill Wakefield two or three months after he arrived here; that he worked as a mechanic for the Blue Bird Cab Company until May 1933, when the cab company went out of business. Thereafter he operated a business of his own in the same building, 321 West Reno. He denied stealing the automobile in question and denied knowing or having anything to do with Frank Mabry, deceased, at the time of the trial. He admitted that he was arrested and taken to Guthrie, but was released without any charges being filed against him. He admitted that he was arrested and taken to Chickasha and held there two days under investigation, but was released without charges being filed against him. He further testified that Bill Wakefield had a car, that he did not know whether it was the same one or not, and asked him if he could sell it for him, and a few days later he asked Fred Walker if he would be interested in a good automobile. Walker said, "Yes," bring it over; that he delivered the car to Walker; that a couple weeks later Wakefield asked

him if Walker was going to buy this car, if he was not he wanted it back. That he talked to Walker about it and Walker said he didn't think he wanted to trade. Later Wakefield asked him to have the car brought back to the hotel; that he himself told Mr. Walker to take it back to the Brown Hotel and leave it there; that he did not know that it was a stolen car; that he did not examine it to see if the numbers were changed. With reference to the garage at 3712 North Western, he testified that he merely loaned Wakefield the money to pay one month's rent and let him use his tools; that he left and went to Illinois, returning about the latter part of June; that the only work he did at the Wakefield garage was on his own car; that in March, 1935, a service truck of the O. G. & E. ran into him, for which settlement was made with him.

It was stipulated and agreed that Dr. J. B. Binkley, of Oklahoma City, if present, would testify that he was treating the defendant for an injury to his spine on March 30, 1935; that Dr. Phil E. White, of Oklahoma City, would if present testify that he was treating the defendant, Ted Gerner, for an injury to his spine on the 30th day of March, 1935.

That Mr. ———— Nelson, of Oklahoma, if present, would testify that he was an insurance adjuster, representing the O. G. & E. Company; that in attempting to negotiate a settlement with the defendant for personal injuries sustained by said defendant in an automobile accident, March 19, 1935, he saw and communicated with the defendant almost daily until April 8, 1935.

In rebuttal, T. R. Husted, recalled, testified that with other officers he made a search of the garage at 3712 North Western avenue, operated by the defendant and Bill Wakefield, and found a die for changing motor numbers, a little affair operated on a wheel; had all the numbers "1" up to "0."

Bill Wakefield, recalled, testified that the defendant was supposed to be buying and selling cars, and had another black Chevrolet coach, that was not the car taken from Glynn Campbell, and the defendant had asked him try to sell that; later Jerry McNeill was arrested for stealing that car.

On cross-examination he stated that in addition to the car the defendant was on trial for, he had two other cars, one taken at Chickasha and one at Guthrie.

It was the theory of the state that the defendant procured the car to be stolen. The defense was innocent possession and an alibi.

In the case of Ex parte King, 42 Okla. Cr. 46, 274 P. 682, this court held:

"Under the provisions of section 20, art. 7, of the State Constitution, a defendant in a felony case may waive the right to have the facts determined by a jury, and they may be submitted to the judge. In such case, the finding of the judge upon the facts shall have the force and effect of a verdict by a jury."

The rule repeatedly announced by this court is that it has no power to reverse a judgment of conviction, upon the ground that the verdict is not supported by the evidence, unless there is no substantial evidence tending to show guilt of the defendant, or the evidence fails so far to support the verdict that the necessary inference is that the jury must have acted from partiality, passion, or prejudice.

In Shields v. State, 32 Okla. Cr. 344, 240 P. 661, 665, this court said:

"The presumption arising from the possession of recently stolen property is one of fact and not of law. It is a circumstance for the jury to consider and weigh along with all the other evidence in the case. If the possession is unexplained, or if it is unsatisfactorily explained, or the explanation, even though plausible, is not believed, the jury

will accord it such weight as they deem right and proper. They are the sole judge as to its weight, and when such fact with the other facts and circumstances in evidence, when given due weight, satisfy the jury beyond a reasonable doubt of defendant's guilt, it is sufficient to sustain the verdict. Slater v. U. S., 1 Okla. Cr. 275, 98 P. 110; Davis v. State, 7 Okla. Cr. 322, 123 P. 560; Gunter v. State, 16 Okla. Cr. 476, 184 P. 797; Cheeves v. State, 18 Okla. Cr. 480, 196 P. 726; [Spann v. State, 19 Okla. Cr. 9, 197 P. 531]; West v. State, 19 Okla. Cr. 355, 198 P. 99."

And see Hart v. State, 57 Okla. Cr. 372, 48 P. 2d 337; Jamison v. State, 59 Okla. Cr. 62, 56 P. 2d 905; Drew v. State, 61 Okla. Cr. 48, 65 P. 2d 549; McDonald v. State, 59 Okla. Cr. 318, 58 P. 2d 345; Maples v. State, 59 Okla. Cr. 324, 58 P. 2d 963; Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191.

Where the inference of guilt can be reasonably drawn from the evidence, this court will not pass upon the weight of the evidence in order to determine whether the defendant is guilty as charged.

There is competent evidence tending to support every material fact stated in the information, and it was for the trial court to judge the weight of the evidence. We cannot substitute our judgment for that of the trial judge.

It is argued by his counsel that the testimony of the defendant and the testimony in support of the alibi is uncontradicted and unimpeached, and for this reason he assumes that the trial judge should have believed their testimony.

The rule as stated in Cyc. is as follows:

"The jury are not bound to believe testimony because it is uncontradicted and not directly impeached. The jury may consider the inherent improbabilities of the statements of the witness, and they may be of such a character as to justify them in disregarding his testimony, although uncontradicted by direct testimony. He may be contradicted by the fact that he states as completely as by adverse testimony,

and there may be so many omissions and improprieties in his evidence as to discredit his whole story." 12 Cyc. 486.

And see Lacy v. State, 61 Okla. Cr. 421, 68 P. 2d 878; Wainscott v. State, 8 Okla. Cr. 590, 129 P. 655.

It is only where the evidence obviously does not warrant the inference of guilt that this court will interfere.

The judgment of conviction herein is therefore affirmed.

DAVENPORT, P. J., and BAREFOOT, J., concur.