## CHAPMAN v. STATE.

No. A-11286.    Dec. 7, 1949.

(212 P. 2d 485.)

Harry Seaton, Public Defender, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J.   The defendant, Vincent K. Chapman, was charged in the district court of Tulsa county, Okla., by information with the crime of larceny by fraud, 21 O. S. 1941 § 1701.   It is alleged that he stole a 1947 automobile.   The evidence discloses the crime to have been committed on May 6, 1948, in the city of Tulsa, Okla. The information alleged that the automobile was the property of Henry Hudson, Inc., and that it was stolen with the intent on the part of said defendant to permanently deprive the owner thereof and to convert the same to his own use and benefit.   A jury was waived and the case was tried to the court, a conviction had and the defendant sentenced to 18 months in the penitentiary.

The evidence offered by the state discloses that the defendant was employed by the Franks Manufacturing Company.   The business in which he was engaged required the use of an automobile and during approximately a year and a half, from time to time he rented cars from the Henry Hudson, Inc.   In this connection a Mr. Glendon Clifford Smith testified on rebuttal he had been with Henry Hudson, Inc., for about a month and he had rented the defendant cars at least a dozen times. On all these occasions the automobile was returned as required by contract.   On May 6th the defendant rented a green Oldsmobile 1947 4-door automobile.   He drove

the car away, and the next time they heard of the car was in the early part of August when it was disclosed it was reported in the 18th Street Garage in St. Louis, Mo. This information, according to the testimony of Mr. Gene Hines, was acquired by the General Motors Acceptance Corporation representative in Providence, R. I., from the defendant himself who had talked with the G. M. A. C. representative there. On the basis of the information received from Chapman, the defendant, the car was picked up in St. Louis by the Henry Hudson, Inc., representative on August 14, 1948. On this evidence the state rested its case, a demurrer was interposed and overruled. The defendant contends the court erred in overruling his demurrer. With this contention we cannot agree. Under the law it could rightly be inferred by the trial court from the foregoing facts that the car had been obtained through larceny by fraud with the intention to permanently deprive the owner thereof, since intent may be shown by circumstantial evidence. Derrisaw v. State, 29 Okla. Cr. 377, 234 P. 230; Fuller v. State, 70 Okla. Cr. 408, 106 P. 2d 832. Sufficient circumstances had been shown to warrant the overruling of the demurrer.

The evidence offered by the defendant discloses that on May 6, 1947, he was a resident of Tulsa, Okla., employed by the Frank Manufacturing Company and had been so employed by them for about two and a half years preceding the commission of the alleged offense, and that as such employee, and personally, he frequently rented cars from the Henry Hudson, Inc., for periods of time as long as 10 days to two weeks, during all of which time the car was not returned to them but was in his sole possession. He testified that on May 6, 1948, he rented the car herein involved to go to Vinita, Okla., to see his wife who had been confined in the Eastern Oklahoma Hospital

for about two months and where she had been confined on prior occasions. He testified he got drunk shortly before renting the automobile on the occasion in question. He continued drinking and did not stop at the hospital because, when he arrived at Vinita, he was so drunk he would not present himself. Apparently, he returned to Tulsa, and remained there until May 10, 1948, where he wrote a hot check for $20. He continued drinking and drove the car to Kansas City and Springfield, Mo. While in Kansas City he gave hot checks, one especially to Woolf Brothers in the sum of $57.92. Thereafter, he drove to Springfield and to St. Louis, Mo. He remained in St. Louis for three or four days when he dedetermined to put the automobile in question in storage at the 18th Street Garage. He did not notify the Henry Hudson, Inc., where the car was. The reason why he did not, he said he could not explain. In addition to the marks of identification heretofore testified to by state's witness Mr. Smith, the defendant testified there was the Fleet Owner's service policy in the automobile at the time of the storage thereof. From St. Louis, the defendant, Chapman, went to Chicago and there passed hot checks; from Chicago he went to Cleveland, Washington, New York and Boston. In Boston he said he seemed to be sobering up. In scriptural language, that was the place where "the young man came to himself". In Boston he voluntarily gave himself up to the officers and was given a sentence of three months for two hot checks he had passed there. This sentence was suspended with one year's probation. From Boston he went to Providence, R. I., where he informed the representative of the G. M. A. C. of the whereabouts of the Henry Hudson, Inc., automobile. Thereafter he left Providence by means of hitchhiking and was picked up by the highway patrol and held for the Chicago police. In Chicago he was sentenced to

six months in the county jail, which time he served, and was then returned to Tulsa, Okla., to face the charge herein involved. The defendant positively denied that it was his intention at the time of acquiring the automobile, or at any time subsequent thereto, to appropriate the same to his own use and deprive the Henry Hudson, Inc., permanently thereof. On cross-examination the defendant admitted that he had been writing hot checks in Tulsa before as well as subsequent to the time of renting the car. One of the hot checks he gave to the Harvard Dry Goods Company was written and passed on April 14, 1948. This he admittedly executed while he was sober. He admitted passing other hot checks prior to the renting of the automobile which he said he passed while he was drunk. The trial court could reasonably conclude that his desire to escape from these malefactions formed the motive for the fraudulent possession of the car. On rebuttal, the state offered proof to the effect that at the time of renting the automobile the defendant was not drunk, and apparently had not been drinking. The judgment and sentence herein complained of was predicated upon the foregoing evidence. The defendant contends the court erred in failing to render judgment in his favor at the conclusion of all the evidence. With this contention we cannot agree.

This case is one that presents a situation, the conclusion as to which is dependent upon one's viewpoint of the evidence. The facts when viewed as the trial court viewed them supports the conviction that the defendant procured the car through larceny by fraud with the intent to permanently deprive the owner thereof, and to escape his prior malefactions. As to the defendant's defense, the trial court found he did nothing to disclose the whereabouts of the car until he saw escape was not

possible. Then it was he busied himself about disclosing its location. In other words, the trial court did not believe the defense. On the other hand, when viewed in another light, if the car was lawfully obtained, and later an intent was formed to steal the same, that would constitute embezzlement. Riley v. State, 64 Okla. Cr. 183, 78 P. 2d 712. Further, if the car had been lawfully obtained, with the subsequent intention only to temporary deprive the owner thereof, intending to return the same, that would constitute trespass. Saferite v. State, 67 Okla. Cr. 229, 93 P. 2d 762. But the question of intent to commit larceny is a question of fact to be determined by the jury under the circumstances and the evidence. Baker v. State, 73 Okla. Cr. 13, 117 P. 2d 174; Jones v. State, 83 Okla. Cr. 358, 177 P. 2d 148. So, also is the question of the defendant's claim of intoxication. Huffman v. State, 24 Okla. Cr. 292, 217 P. 1070; Calvert v. State, 55 Okla. Cr. 346, 30 P. 2d 717; Derrisaw v. State, supra. Since the defendant waived a jury and elected to try the case to the court, the trial court's findings have the same effect as the verdict of a jury. Trott v. State, 62 Okla. Cr. 52, 70 P. 2d 118; Gerner v. State, 64 Okla. Cr. 104, 77 P. 2d 1190. Finally, in considering the sufficiency of the evidence, the function of this court is limited to ascertaining whether there is a basis in the evidence on which the jury could reasonably conclude that the accused is guilty as charged, and where there is such a basis, the conviction will not be reversed for insufficiency of the evidence. Jamison v. State, 59 Okla. Cr. 62, 56 P. 2d 905. The same rule applies to the judgment of the trial court on a finding of guilty where a jury has been waived. The evidence is sufficient when viewed from the trial court's standpoint to establish all of the essential ingredients of larceny by fraud and thus to support the

conviction. For all of the above and foregoing reasons, the judgment and sentence herein imposed is affirmed.

JONES, P. J., and POWELL, J., concur.