## EAKIN v. STATE.

No. A-11772. July 29, 1953.

Rehearing Denied Sept. 2, 1953.

(260 P. 2d 730.)

John W. Tyree, Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, J. The plaintiff in error, Harold Eakin, defendant below, was charged by information in the superior court of Comanche county, Oklahoma, with the crime of larceny, in that he did take, steal and carry away from the possession of Baxter Marr one blue 1950 Chevrolet 2-door sedan Stylemaster automobile, the same being the personal property of the said Baxter Marr, with the unlawful, wrongful, fraudulent and felonious intent, while acting conjointly with Duvle J. Hill, to deprive the said Baxter Marr of said property and convert the same to their use and benefit. The offense was alleged to have occurred on August 27, 1951 in Comanche county, Oklahoma, within the city of Lawton. A jury was waived and the case was tried on a transfer to the district court. The defendant was found guilty and judgment and sentence was rendered against him to serve a term of 5 years in the State Penitentiary at McAlester, Oklahoma, and from said judgment and sentence this appeal has been perfected.

The evidence material to the determination of the issue herein is in substance as follows: Baxter Marr testified that he was a member of the partnership of Kardokus-Marr Motor Company located in Lawton, Oklahoma, that the partnership operated the Hudson agency and a used car lot in connection therewith. For about two months prior to the time herein involved the defendant, Eakin, had been employed by the partnership as a used car salesman. The defendant was permitted to take cars off the lot and show them, and he was permitted to drive an automobile home overnight. On or about August 25 he was supposed to drive a 1949 green Hudson home, which he did do, and he was not supposed to come back the next day because that was Sunday. Marr related, on Monday morning, he saw the green Hudson on the lot and missed the Chevrolet automobile as described in the information, he thought the defendant had taken the automobile to show it to a customer. After August 27, 1951, he made an effort to find the defendant, that he was informed by the defendant's mother that he had left home to report back to work. About three weeks after the automobile disappeared he was advised that Duvle Hill and the defendant were arrested in possession of the automobile in Alton, Missouri, that he went there and returned the same to Lawton. Defendant admitted taking the automobile from the car lot. The automobile was in good condition except for the fact that the radio was gone and the spare tire and wheel was likewise gone; that when the automobile was supposed to have been stolen it had an Oklahoma county, Oklahoma, license tag on it. When it was picked up at Alton, it had a Comanche county tag on it, that inquiry disclosed that the spare tire and wheel had been pawned at a country filling station about 56 miles east of Alton.

Deputy Sheriff Phillips testified that he went to Springfield, Greene county, Missouri, and returned the defendant and Duvle J. Hill to Lawton. This was the state's pertinent evidence in chief.

The defendant then offered a signed statement made by Duvle Hill, then confined in the reformatory at Granite, admitted in evidence by stipulation between the county attorney and John Tyree, attorney for the defendant, Eakin. It, in substance, disclosed that, on Friday evening, August 24, he was picked up by the defendant, Eakin, in a Chevrolet car and taken home. On the 27th

they began a tour around Medicine Park which they continued until September 5, 1951. During the time they were in and around Medicine Park they engaged in fishing, swimming and drinking. Both of them were under the influence of intoxicating liquor. That on the morning of September 5, at about 8:30, the defendant drove him by the Peoples Ice company where he was paid $76 wages due him and he said that he and Eakin decided to drive to Detroit, Michigan, that Hill might visit his two children who were living with his divorced wife. This they did, but while they were in Michigan they ran short of money and Harold Eakin pawned the car radio in Geary, Michigan, in order to get money for gas with which to drive back home to Lawton. (The defendant testified he had lost the pawn ticket covering the radio.) Hill said they then started driving back to Lawton in the direction of Mammoth Springs, Arkansas, where Hill said he had an aunt living. When they reached the outskirts of Alton, Missouri, they noticed they were running low on gas. Eakin then arranged with the filling station operator there to take the spare wheel and tire in pawn for 5 gallons of gas. They expected to borrow some money from Hill's aunt and return and pay the man for the 5 gallons of gas. Before they could get out of the vicinity of Alton, Hill said they were arrested.

The defendant testified in his own behalf that he was employed at the time herein involved as a salesman at the Hudson automobile agency of Kardokus & Marr. On August 24, 1949, he drove the Chevrolet from the car lot to his home; that he took it back the next morning. He related that he had been permitted to drive a car away from the lot to his home every night he had been working for them. He did not drive any certain automobile. On cross-examination he testified that Mr. Kardokus gave him permission to take this particular automobile home on August 25, 1949. Nothing appears in the record by way of rebuttal to contradict this testimony. He further related that he had a key to the office where the car keys were kept. Mr. Marr gave him the key. He related that he kept the Chevrolet car over the weekend and that he and Duvle Hill started their rounds from August 27 until September 5. During this time they toured around Lawton and Medicine Park, and swam, fished, and drank, until they decided to go to Detroit, Michigan, so that Hill could visit his children. In Geary, Michigan, he pawned the radio when he became in need of money, while they were on their way from Michigan to Mammoth Springs, Arkansas, where Hill's aunt lived and from whom they proposed to borrow money to complete the return trip to Lawton. Before they got to Alton, Missouri, they were getting low on gas and he pawned the spare tire until he could get to Mammoth Springs; that shortly thereafter they were arrested. The defendant admitted that he and Hill changed the license plates on the car. This was apparently done to avoid apprehension. The Comanche county license tag was in the car and had been for some time before the car was taken off the lot, as shown by the record. He denied it was ever his intention to permanently deprive Mr. Marr and Mr. Kardokus of their automobile, testified positively that they were on their way enroute home to Lawton when they were arrested. He admitted that he had been twice convicted of automobile theft and desertion from the military service. These prior convictions could be considered by the court as going to his credibility as a witness. Byars v. State, 56 Okla. Cr. 349, 39 P. 2d 157. Upon these essential facts the trial judge made this observation before pronouncing judgment and sentence upon the defendant, that "the weakest point in the case was the question whether or not the defendant was guilty of embezzlement or whether he was guilty of car theft". He found the defendant guilty of larceny and entered the hereinbefore observed judgment and sentence against him.

As hereinbefore indicated the trial judge was not in doubt as to the defendant's guilt of law violation, but was in a state of dilemma as to whether this case

came within the statute defining larceny of an automobile, Title 21, § 1720, O.S.A. 1951, as follows:

"Any person in this State who shall steal an aircraft, automobile or other automotive driven vehicle shall be guilty of a felony; and upon conviction shall be punished by confinement in the State Penitentiary for a term of not less than three (3) years, nor more than twenty (20) years."

Or whether, under the facts, the crime charged came within the provisions of Title 21, § 1451, O.S.A. 1951, as follows:

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted."

Or whether under the facts the case fell within the provisions of Title 21, § 1455, O.S.A. 1951, as follows:

"If any person being entrusted with any property as bailee, * * * fraudulently converts the same or the proceeds thereof to his own use, or secretes it or them with a fraudulent intent to convert to his own use, he is guilty of embezzlement, whether he has * * * determined the bailment or not."

In fact, as we said in Chapman v. State, 90 Okla. Cr. 224, 212 P. 2d 485, 488, a case of larceny by fraud:

"This case is one that presents a situation, the conclusion as to which is dependent upon one's viewpoint of the evidence."

In this connection, we are confronted by the principles announced in Gerner v. State, 64 Okla. Cr. 104, 77 P. 2d 1190:

"Under the provisions of section 20, art. 7, of the State Constitution, a defendant in a felony case may waive the right to have the facts determined by a jury, and they may be submitted to the judge. In such case, the finding of the judge upon the facts shall have the force and effect of a verdict by a jury.

"The credibility of the testimony of defendant and his witnesses, where a jury is waived, is for the trial court to determine and, although such testimony may be uncontradicted and not directly impeached, when circumstances tend to lessen the probability that such testimony is true, the trial court may give it such weight as he may deem proper, or wholly disregard it."

Under these principles the trial judge could, and apparently did, completely ignore the defendant's testimony, since the record is conclusive that the defendant as a witness for himself admitted two prior convictions for motor vehicle thefts and one for desertion from the army which went to his credibility as a witness. Byars v. State, supra. In the foregoing analysis of the evidence Mr. Marr testified he told the defendant to take the green Hudson and drive it home over the weekend, and he testified that the defendant did so do. On Monday he saw the green Hudson back on the lot and discovered the Chevrolet was gone. The record supports the proposition he did not give the defendant permission to take the Chevrolet automobile and did not know when he acquired possession of it. The defendant testified Mr. Kardokus gave him permission to take the Chevrolet. He fixed this time as of Saturday about the same time Mr. Marr said he took the Hudson. The trial judge who heard the testimony, saw the defendant testify and heard his admission as to prior convictions did not believe in his credibility and ignored the defendant's testimony altogether; even though in substance it was corroborated in effect by the statement of Duvle Hill offered without confrontation or without cross-examination. The trial court finding the proof as offered by the state to be the facts of the case concluded the defendant was guilty of larceny as charged in the information and not embezzlement. As we said in Chapman v. State, supra:

"In other words, the trial court did not believe the defense. On the other hand, when viewed in another light, if the car was lawfully obtained, and later an intent was formed to steal the same, that would constitute embezzlement. Riley v. State, 64 Okla. Cr. 183, 78 P. 2d 712. Further, if the car had been lawfully obtained, with the subsequent intention only to temporarily deprive the owner thereof, intending to return the same, that would constitute trespass. Saferite v. State, 67 Okla. Cr. 229, 93 P. 2d 762. But the question of intent to commit larceny is a question of fact to be determined by the jury under the circumstances and the evidence. Baker v. State, 73 Okla. Cr. 13, 117 P. 2d 174; Jones v. State, 83 Okla. Cr. 358, 177 P. 2d 148. * * * Finally, in considering the sufficiency of the evidence, the function of this court is limited to ascertaining whether there is a basis in the evidence on which the jury could reasonably conclude that the accused is guilty as charged, and where there is such a basis, the conviction will not be reversed for insufficiency of the evidence. Jamison v. State, 59 Okla. Cr. 62, 56 P. 2d 905. The same rule applies to the judgment of the trial court on a finding of guilty where a jury has been waived. The evidence is sufficient when viewed from the trial court's standpoint to establish all of the essential ingredients of larceny * * * and thus to support the conviction."

Such is the situation in the case at bar. The defendant relies principally upon the case of Saferite v. State, 67 Okla. Cr. 229, 93 P. 2d 762. We have no quarrel with the principles therein announced, but as was observed in Traxler v. State, 96 Okla. Cr. 231, 251 P. 2d 815, there was a misapplication of the law for the author of that opinion substituted this court for the jury as the trier of the facts and the conviction was actually reversed on the facts rather than the law. If we were to reverse this case it would be upon the same erroneous assumption. Where a jury is waived and the judge sits as the trier of the facts and there is evidence reasonably tending to support his findings, we are without authority of law to vacate or set aside those findings on appeal, for under such conditions, the finding of facts is within the sole and exclusive province of the trial judge to make. Of course, if there is no evidence reasonably tending to support his findings the converse of the rule would be true and we would reverse the trial judge, but such is not the situation herein presented. For all the above and foregoing reasons the judgment and sentence herein imposed is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.