Charles Harold PHILLIPS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12556.

Criminal Court of Appeals of Oklahoma.

Jan. 29, 1958.

Earl Truesdell, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Charles Harold Phillips was indicted by a grand jury of Tulsa County, and charged with the larceny of an automobile; was tried in the district court before a jury, and convicted, but the jury being unable to agree upon the penalty, left that to the court with recommendation of leniency. The court assessed the punishment at a term of five years in the state penitentiary at McAlester. Prior to 1945 that was the minimum penalty, but the 1945 legislature changed the minimum penalty to three years, with the maximum of twenty years. 21 O.S.A. § 1720.

For reversal but one proposition is presented, and being that the State failed to show any intent on the part of the defendant to deprive the owner permanently of his automobile as provided by the terms of the statute. 21 O.S.A. §§ 1701, 1720.

A summary of the evidence is required.

The State developed that at approximately 9:20 p. m. on Sunday, June 2, 1957, a 1957 four-door Plymouth automobile was taken from the parking lot of the Ruark-Rent-A-Car Company, located at 823 South Boulder, Tulsa, Oklahoma. At approximately 2:00 o'clock the morning of June 3 two Tulsa police officers found the defendant and one Dewey Neal in possession of the stolen automobile, about the middle of the block near the corner of Seventh and Lewis Streets, Tulsa.

Jim Clark, Tulsa police officer, identified defendant as the man he had arrested the morning of June 3 behind the wheel of the car in question. He said that he had a description of the stolen car and observed the car, stopped it and asked the defendant if it was his car, and that he answered, "No", and witness asked defendant where he got it, and that he said he had stolen it "down on Ninth Street".

Witness said that he noted that defendant had on a pair of leather gloves, although the temperature of the weather was 70 degrees or over. He also said that defendant appeared to have had a few beers, but that his companion Nichols was definitely intoxicated.

Herb C. Manring, manager of the Ruark-Rent-A-Car Company, testified that he received a call about 9:30 in the evening of June 2, and went to the parking lot and found the Plymouth car in question missing; that the car was on the lot when he closed about 5:30 that afternoon; that the keys had been left in the car, and when he reached the lot after being called the chain across the front entrance to the lot had been broken.

Claude Morris testified that on June 2 he was living at 817 South Boulder, which was on the same side of the street as the Ruark-Rent-a-Car lot; that about 9:20 p. m. he and his wife were watching television and he heard a noise like a chain or glass breaking; that he looked out of the window and then went downstairs, and when he reached the street he saw a Plymouth car being driven north on Boulder toward Eighth Street; that he then went back upstairs and 'phoned Mr. Manring; that he saw a person in the car, but could not tell whether he was a white or colored man.

B. J. Jones, Tulsa police officer, testified that he had a conversation with the defendant on June 4, 1957 in the office at the detective bureau, which was in the form of questions and answers, and that the statement was reduced to writing and signed and verified by defendant. This statement was admitted into evidence without objection from defendant's counsel. In this statement defendant gave his age as 41 years, and when asked about the stolen Plymouth car answered as follows:

"A. Well, about all I can say is that I walked on to the parking lot and got the car, then drove around for a few minutes, not long, and went down to Lola's restaurant on West 11th, I parked the car in back, set there for a few minutes and got out and went around to see if my wife was still there, then I walked around the block and passed the Gay 90's bar to see if she

was in there, I went back to Lola's restaurant and she was gone when I got back there, at least she was gone, I didn't see her, then I drove over to her house trying to find out if she was there, I didn't see her so I left, started out on East Admiral to some of those night clubs to see if she was there and I stopped at the Rainbow Bar on East 2nd St. I was in there a little while talking with some fellows I knew and see Dewey Nichols and told him to come and go along with me, and that's about all. We drove out to a bar on Lewis between Admiral and Admiral Blvd. stopped and had a beer, then we drove around and went out looking at several spots looking for the car my wife was supposed to be in, then we drove on over to 11th Street, went out to several of those spots and didn't see them so we drove on back to town and that is when we were arrested in the car. At no time during the evening did Dewey Nichols know this car was stolen until after we were arrested.

"Q. How did you get this car off the parking lot through the chain that was across the drive? A. I just drove the car up to the chain and pushed against it with the car until it broke.

"Q. Is there anything you wish to add in your behalf? A. No."

The defendant demurred to the evidence of the State. He did not testify but called two witnesses.

Sybil Phillips testified that she and the defendant had been married about two years, and that he worked at the Magneto Ignition Company during this time. She had been employed for around nine months as a waitress at Lola's Cafe, 234 West Eleventh, Tulsa. She said that she and defendant had an argument on May 29, 1957 and she filed a suit for divorce. Her husband took his clothes and moved out of the house; that on the day of the alleged theft she first saw her husband about 10:30 in the morning when he came to the house, and she saw him about 6 o'clock that evening when he came back to the house a second time, and said "He was on a crying jag—drunk", at that time. She testified that she also saw defendant later that evening at Lola's restaurant after she had gone to work; that he came to the door and she went outside and talked to him, and then he went next door to a bar; that he stood at the back door for two hours, then went around to the front and back towards the bar. She last saw him about 9:20 walking up the street towards Boulder.

Lola Armstrong, operator of Lola's restaurant at 234 West Eleventh, testified that on Sunday, June 2, defendant came into her restaurant looking for Mrs. Phillips; that he started coming in about 5:30 p. m., and continued to come in about every thirty minutes until 9 or 9:15. She said he had been drinking, and each time he left and returned, he appeared to be more intoxicated than before. She closed her place of business about 9 o'clock that evening and took Mrs. Phillips home in her car.

This ended the evidence, and counsel for defendant moved for a directed verdict of not guilty, which was overruled.

Counsel contended that the taking of the car by defendant was only to deprive the owner temporarily of the same, and was not with the intent to deprive him permanently thereof. The case of Saferite v. State, 67 Okl.Cr. 229, 93 P.2d 762 is relied on, and particularly the principle set out in paragraph 1 of the syllabus, reading:

"Any taking of personal property with the intent to temporarily deprive the owner thereof, and then to return the same, does not constitute larceny, but is a trespass. In order to constitute a felonious intent, the taking must be to permanently deprive the owner of the property."

In other language, but of the same import, we have said:

"Upon a charge of stealing an automobile, the intent must be felonious

and to permanently deprive the owner of the property."

See Richardson v. State, 76 Okl.Cr. 101, 134 P.2d 375; Tillman v. State, 82 Okl.Cr. 276, 169 P.2d 223, 225.

It could have been, of course, that the defendant, fired up by liquor and denuded of any restraining control of his impulses, was pursuing a limited plan of contacting his wife in Tulsa at any cost, and needing transportation, took the car without thought of retaining the car thereafter. Defendant did not testify and interposed no such defense. And, of course, intoxication would not excuse or mitigate the crime, unless accused was so intoxicated that his mental powers were overcome and it was therefore impossible for him to form a criminal intent. 21 O.S.1951 § 153; Huffman v. State, 24 Okl.Cr. 292, 217 P. 1070; Buck v. State, 16 Okl.Cr. 356, 182 P. 913; Chapman v. State, 90 Okl.Cr. 224, 212 P.2d 485.

The court by proper instructions submitted such questions to the jury, and the jury found against the defendant.

The court further instructed the jury:

"You are instructed that in this case it is necessary that the state prove that the taking of the automobile by the defendant was with the felonious intent on his part to deprive the owner thereof permanently and with the felonious intent to convert the same to his own use.

"You are instructed that the defendant's defense is that he did not intend to permanently deprive the owner of the automobile and that he had no felonious intent to convert the same to his own use."

In view of the fact that the defendant did not testify and offered no proof as to any intent that he may have had, the court was not required to give the last paragraph of the above instruction, but apparently did so out of an abundance of precaution. It was favorable to the defendant.

The burden was on the State to introduce evidence to show facts indicative of defendant's intention to permanently deprive the owner of the Plymouth car in question. The taking, plus circumstance of the use of gloves in warm weather possibly for the purpose of preventing tell-tale finger prints, plus defendant's admission to the officers that he had stolen the car, and without any claim that he had only taken it for a temporary purpose, was sufficient to make out a prima facie case for the State, and no evidence of any contrary intent was produced by the defendant.

The Saferite case relied on by the defendant was a case of misapplication by this court of the law to the facts, because the author of the opinion substituted this court for the jury as a trier of the facts and the conviction was actually reversed on the facts, rather than on the law. We attempted to demonstrate this in a footnote to Traxler v. State, 96 Okl.Cr. 231, at page 244, 251 P.2d 815. And later in Eakin v. State, 97 Okl.Cr. 190, at page 194, 260 P.2d 730, 734, Judge Brett in the body of the opinion said:

"The defendant relies principally upon the case of Saferite v. State, 67 Okl.Cr. 229, 93 P.2d 762. We have no quarrel with the principles therein announced, but as was observed in Traxler v. State [96 Okl.Cr. 231], 251 F.2d 815, * * * there was a misapplication of the law for the author of that opinion substituted this court for the jury as the trier of the facts and the conviction was actually reversed on the facts rather than the law. If we were to reverse this case it would be upon the same erroneous assumption. Where a jury is waived and the judge sits as the trier of the facts and there is evidence reasonably tending to support his findings, we are without authority of law to vacate or set aside those findings on appeal, for under such conditions, the finding of fact is within the sole and exclusive province of the trial judge to make. Of course if there is no evidence reasonably tending to support his findings the converse of the rule would be true and we would re-

verse the trial judge, but such is not the situation herein presented."

The principle, reiterated in Sholes v. State, 97 Okl.Cr. 158, 260 P.2d 440, 442, as argued by the attorney general, is applicable here. There we said:

"Where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, this court will not interfere with verdict even if there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts."

As we have noted the defendant did not testify. The record is silent as to previous convictions for crime, if any. We do note that the jury left the fixing of the penalty to the court, but recommended leniency. The court was not obliged to follow the recommendation if the evidence would not justify. If any evidence was heard by the court as to defendant's past record as an aid to the court in determining the punishment, it is not reflected in the record.

From the facts before us and heretofore recited, it is felt that justice would be served by reducing the sentence of five years to three years in the State Penitentiary, and the judgment entered as so modified, is affirmed.

BRETT, P. J., and NIX, J., concur.