## CHARLES JONES et al. v. STATE.

No. A-10661.  Feb. 5, 1946.

(177 P. 2d 148.)

C. J. Moody, of Pauls Valley, and Geo. B. Forrester, of Sulphur, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendants in error.

JONES, J.   The defendants, Charles Jones and Inez Higgins, were jointly charged in the district court of Murray county with the crime of grand larceny, were tried, convicted, and each of them was sentenced to serve a term of one year in the State Penitentiary, and have appealed.

For a reversal of this case, two propositions are presented.   First, the court erred in overruling the motion for directed verdict because the evidence is not sufficient to establish the essential element of intent to deprive the owner of the property, and is not sufficient to show venue in Murray county.   Second, the court erred in admitting in evidence testimony concerning the property obtained by search of defendant Higgins' house over objection of the defendant Higgins.

The information filed against the defendants charged them with the theft of approximately $200 from the person of one S. V. Lewis, on about August 1, 1943. The witness S. V. Lewis testified that he owned a store at Dougherty, Okla. That about noon of Sunday, he closed his store and took all of the money he had in the cash drawer, which included about $250 in checks, and placed the money in his pocket. He then drove to Sulphur to obtain some beer, but was unable to find any. That he had almost a pint of whisky with him. That he knew John and Inez Higgins; that he drove to their house and asked to buy some beer. That the defendant Inez Higgins said they did not have any, but that they might get some at Joseph's. That Inez got into the car with him and drove with him to Joseph's place in Sulphur, but they had no beer there. That Inez then suggested that they drive over to Davis, Okla. That when they arrived at Davis, Inez called the defendant Charles Jones over to the car and told him they were looking for beer. Charles said there was no beer in Davis, but that if they would drive to Wynnewood he thought they could buy some homebrew over in negro town. That they drove to Wynnewood and drank several rounds of homebrew out in negro town, and also some whisky out of his bottle. That the witness Lewis paid for the drinks. Lewis testified that about 4 p.m. he "passed out" and did not know anything until he awakened early the next morning and found himself lying on a cot out in the front yard at the Higgins home at Sulphur. That he noticed that his money was gone, and called Inez Higgins and asked if she had his money and she said, "No." That he then said, "Where is my money—I figure you have it." That she then said, "If Charles Jones got your money, I will make him give it back to you." That all of his money, including the

bills and silver, was gone, but that the checks were still left in his pocket.

The witness Lewis then got in his car and started towards his home. That he turned south off the road two miles east of Davis. That he felt sick and tired and stopped the car, and lay down on the front seat and went to sleep. That late that afternoon, some people from Davis found him and took him home. That the next day he went to Sulphur and told the sheriff and county attorney about his money disappearing and signed a complaint against the defendants.

Marvin Stephens, sheriff of Murray county, testified that on Monday, about August 1, 1943, he was informed that S. V. Lewis was missing. That he was advised that his store had not been opened, and that Lewis had not been seen since about noon on Sunday. That shortly after he received this information, he was informed that Lewis had been found, but that he had reported that he had been out with the defendants, Charles Jones and Inez Higgins, and that approximately $200 which he had with him had disappeared.

That he drove to Davis and found Inez Higgins and told her that it was claimed that Mr. Lewis had lost a large sum of money while he was with her. That she stated she knew nothing about any money, but admitted that she and Charles Jones went with Lewis in his car to Wynnewood where they purchased some liquor and then went back with him to Sulphur. That Lewis had been drinking, but she denied knowing anything about the disappearance of any money. That after talking with Mrs. Higgins, he found Charles Jones and brought both of them to the county jail at Sulphur. That the defendant Jones admitted being with

Inez Higgins and Lewis in Lewis' car, but he denied that he had taken any money or knew anything about any money.

The sheriff further testified that after his conversation with the defendants at the jail, he went to the home of John Higgins, the husband of the defendant Inez Higgins, and asked his permission to search the premises. That permission to search was given, and in a clothes closet several bills were found in a cookie jar on a shelf in the closet. That John Higgins disclaimed any knowledge of the money. That the sheriff and his deputy had John Higgins count the money and there was $98 in the jar. That after finding the money, they returned to the jail and had a conversation with Charles Jones. That he then told them his part of the money he got in the deal was wrapped in an old towel and laying on top of a cupboard on the second floor of a hotel in Davis. That the witness, together with his deputy, and Mr. Warren, night watchman at Davis, went to the hotel at Davis described by the witness and found $68 in bills in a towel laying on top of the cupboard at the place described by the defendant Jones. That they then had a conversation with Inez Higgins in which she told them at first that she knew nothing about it, but later in the same conversation she said that she got the money found at her home from Charles Jones at Davis.

Marion Holland, deputy sheriff, testified to substantially the same facts as related by the sheriff. He testified positively that in his first conversation with Inez Higgins she said she did not know anything about the money, had not seen any money on Lewis and did not know that he had any.

John Warren testified that he was a nightwatchman at Davis. That after midnight on Monday, August 1, 1943, the sheriff and a deputy came to Davis and got him to go

with them to make a search of the second floor of the hotel. That the sheriff braced him while he got up and looked on top of an old cupboard three or four doors down the hall from the room of the defendant Jones. That he found an old towel laying on top of the cupboard with eight one dollar bills and three twenty dollar bills wrapped in it.

After the state rested their case, the defendants demurred to the evidence, which was overruled. The defendants then rested without offering any evidence in their behalf. Thereafter, they moved the court to instruct the jury to return a verdict of not guilty, which was overruled with an exception saved to the defendants.

As to the first contention of the defendants that there is no evidence to show criminal intent to commit larceny, we find the following circumstances, among others: First, the prosecuting witness Lewis had approximately $200 when he "passed out" in the company of the defendants. Second, when he regained consciousness at the home of Inez Higgins, his money was gone. Third, admissions by both defendants when they were first arrested that they had been with the prosecuting witness to Wynnewood to get some homebrew. That he had "passed out" and they had driven him back to the home of Inez Higgins. Fourth, their denials at first of knowing anything about any money. Fifth, the finding of a large amount of money hidden in the home of Inez Higgins, and the finding of a large amount of money at the hotel where Charles Jones told them it was hidden. Sixth, admission by Inez Higgins that the money found by the officers in her home had been obtained by her from Charles Jones. Seventh, admission by Charles Jones that the money found at the hotel was his part of the money "got in the deal."

This court has many times held in accordance with the statute that in order to constitute larceny, the taking must be without authority and with the intent to deprive the owner permanently of the property. 21 O. S. 1941 § 1701; Riley v. State, 64 Okla. Cr. 183, 78 P. 2d 712; Fuller v. State, 70 Okla. Cr. 408, 106 P. 2d 832.

It is our conclusion that the evidence is sufficient to require the submission of the case to the jury for their determination as to whether the defendants took the property from the prosecuting witness, and if so, if it was with the felonious intent to permanently deprive him of said property.

It is provided by statute that:

"When property taken in one county, by burglary, robbery, larceny, or embezzlement, has been brought into another, the jurisdiction of the offense is in either county." 22 O. S. 1941 § 128.

Under this statute, irrespective of whether the property was taken from the prosecuting witness in Wynnewood or somewhere else outside of Murray county, the evidence is sufficient to show that it was brought into Murray county and was found by the officers in Murray county.

The contention that the search of the Higgins home was illegal and the property obtained in the search inadmissible in evidence is without merit. John Higgins, the head of the household and the owner of the house, according to the evidence, gave the officers permission to make the search. The burden is upon the party alleging the invalidity of a search to show that the same is illegal. There was no evidence offered by the defendant to refute the statement of the sheriff that permission was given to make the search.

Furthermore, it has been held that where a lawful arrest of an accused is made, officers may legally search his premises in order to find and seize things connected with the crime as its fruits, or as the means by which it was committed, and articles found by reason of such search, otherwise admissible, may be used as evidence at the trial. Herren v. State, 74 Okla. Cr. 432, 127 P. 2d 384; Sears v. State, 79 Okla. Cr. 437, 156 P. 2d 145; Sallee v. State, 51 Okla. Cr. 414, 1 P. 2d 794.

In Sallee v. State, supra, it is stated:

"Where the officers have information that a felony has been committed, and where they have reasonable ground to believe the defendant has committed this felony, they may legally arrest him, and evidence obtained in a search of defendant's premises after his arrest is admissible, notwithstanding the defendant may have escaped from the officers shortly after his arrest."

It is our opinion that the defendant had a fair and impartial trial, and there are no errors in the record sufficient to require a reversal of the judgment of conviction.

The judgment and sentence of the district court of Murray county is accordingly affirmed.

BAREFOOT, P. J., and BRETT, J., concur.