# YOUNG v. STATE.

No. A-11501.   Feb. 20, 1952.

(241 P. 2d 424.)

E. M. Carter, and Harland A. Carter, Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

POWELL, J.   This is an appeal by Bill Young, hereinafter referred to as defendant, who was charged, tried and convicted of the crime of unlawful possession of intoxicating liquor in the county court of Okmulgee county.   The jury returned a verdict of guilty and assessed defendant's punishment at thirty days in the county jail, and a fine of $50.

Prior to trial defendant filed a motion to suppress the evidence "for the reason that the purported search warrant and affidavit were not issued, served and returned according to law."   After hearing, the trial court overruled this motion.   Counsel argue that the search warrant was a "blanket warrant" in that it described the premises of two separate families.   This is the vital issue raised.

Mrs. R. D. Holleman testified in support of the motion. She stated that her husband, who was a nephew of defendant, lived with witness and their daughter in three rooms of the eleven rooms leased by the defendant at the address described in the search warrant. Witness stated that they were living in said three rooms on February 17, 1950, and paid $35.00 per month rent, and she produced some rent receipts which were purportedly signed "Bill Young" by defendant's wife, and given to the husband of witness. Mrs. Young was not called as a witness. Mrs. Holleman stated that she guessed the writing was Mr. Young's. The receipts covered a period from December 5, 1949, to March 20, 1950, and were admitted in evidence over the objection of the county attorney. The receipts were never properly identified.

The defendant, Bill Young, testified in support of his motion to suppress. He stated that he rented to the Hollemans, but that his wife prepared the receipts and signed his name to them. On cross-examination witness stated that there were eleven rooms in the building upstairs, and the lower floor was divided into a fish market and a radio shop, but that he leased only the eleven rooms upstairs; that he leased from a Mr. Thomas, and lived in five of the rooms, and rented the other rooms out as furnished apartments, and that these apartments were furnished with beds and other furniture.

Counsel next called as a witness Blane Hill, who stated that he was chief of police of Okmulgee, and that he served the search warrant involved. Witness further stated that he was familiar with the premises described in the search warrant, and being a two-story brick building with a fish market and radio shop down stairs. On cross-examination by the state, witness stated that he had recently visited the eleven rooms in question and since November, 1949, until the time of trial, had visited the premises approximately seven or eight times, and that during such visits he had not observed any other family living upstairs, other than that of defendant, consisting of defendant, his wife and little girl. Witness stated that he had seen other people up there, but that they did not live there. He stated that he had been in all of the eleven rooms; that when he raided the place and obtained the liquor in question that the defendant told him that he had part of his rooms rented out to a glass worker, but that he had not yet moved in; that he was to have the northwest apartment and that the doors to that apartment were standing wide open. Witness further testified:

"Q. Over the period December 5, 1949 to March 20, 1950, a period of four months, how many times have you raided that property? A. Three or four times. Q. Did you observe anybody there besides the ones you have mentioned? A. No, sir, I have not."

On re-cross-examination, witness testified:

"Q. Captain Hill, these other rooms, did you see any one room outside the two you mentioned, was any room completely furnished with beds, were they in a condition to be rented? A. I never seen a room completely furnished. I never have seen one completely furnished. Q. What were they being used for * * * ? A. There were some papers and stuff scattered around on the floors. One room had a big chester [sic] drawers and a big cabinet and some loose papers in them."

Under the facts stated, did the court err in concluding that the warrant was not a "blanket warrant", that is, did more than one family occupy the premises searched? All parties would concede, of course, that the burden of proving the invalidity of a search warrant is on the defendant presenting the motion to suppress the evidence obtained under authority of such warrant. Clasby v. State, 78 Okla. Cr. 45, 143 P. 2d 430; Isbell v. State, 78 Okla. Cr. 78, 143 P. 2d 627; Jones v. State, 83 Okla. Cr. 358, 177 P. 2d 148.

Here the defendant and one other witness testified that the Holleman family occupied three rooms of defendant's eleven rooms at the time of the search in question. A third witness offered by the defendant denied that any family other than that of defendant occupied the room. He stated that there were no beds except in defendant's apartment. Thus there was a conflict in the evidence. It was the duty of the court to decide this conflict. The court had opportunity to observe the witnesses, to note their demeanor, consider their interest in the case and by such aids reach what he would determine to be a true conclusion based on such evidence. In Akers v. State, 90 Okla. Cr. 160, 212 P. 2d 170, this court said:

"Trial court's ruling on motion to suppress evidence will be upheld where the evidence introduced at the hearing on said motion is conflicting and there is ample evidence to support the court's finding."

See, also, Pickens v. State, 71 Okla. Cr. 167, 110 P. 2d 319; Dawson v. State, 83 Okla. Cr. 263, 175 P. 2d 368; Wood v. State, 76 Okla. Cr. 89, 134 P. 2d 1021.

It is of no consequence that the evidence introduced was that offered by the defendant. Clark v. State, 65 Okla. Cr. 56, 82 P. 2d 844; Jackson v. State, 12 Okla. Cr. 446, 158 P. 292; Brady v. State, 91 Okla. Cr. 367, 219 P. 2d 267, 273.

It is further argued by counsel for defendant that the search warrant was not "returned" as provided by law, in that it was signed by Blane Hill, who did not place after his signature the words "Chief of Police of Okmulgee." It is argued that such failure made void the search. From the warrant and return offered in evidence by defendant, it appears that the return was signed by Blane Hill, and just under the signature appeared the word "Officers" and just under this word appears the names of Blane Hill, George Carter and R. D. Blaine. The return, therefore, indicates that Blane Hill and the other persons signing were officers, and the evidence offered by defendant on motion to suppress developed that Blane Hill was the chief of police of Okmulgee, Oklahoma, and on trial the evidence of the State so showed.

No attempt is made by the defendant to show that the irregularity in question prejudiced him in any way. This court in the case of Byrd v. State, 91 Okla. Cr. 433, 219 P. 2d 1027, 1028, said:

"In this connection the evidence discloses that the warrant was served on the defendant in person. There is no showing that the search and seizure was not legally made, or that prejudice resulted to the defendant in the officer's failure to comply with the statutory requirements in making his return. Under these conditions the same does not constitute reversible error."

It has even been held by this court in many cases that the failure of the officers to make any return at all does not necessarily constitute reversible error. In Crim v. State, 68 Okla. Cr. 390, 99 P. 2d 185, we said:

"A search warrant, otherwise valid, which has been executed within ten days from the time it was issued, is not rendered invalid by failure of the officer to make a return thereof."

We do not find where defendant showed that his rights were in any way prejudiced by the stated irregularity in the return to the search warrant.

Counsel also argue that the search warrant was issued without any affidavit to support it. Defendant introduced in evidence an affidavit for search warrant, signed by James Sparks, and call attention to the search warrant, also introduced in evidence, which recites:

"Proof by affidavit having been this day made before me by Blane Hill * * *."

The county attorney objected to the introduction in evidence of the instrument in question, stating:

"The State objects for the reason it is not the proper search warrant to introduce."

Although the defendant offered Blane Hill, who testified that he was chief of police of Okmulgee, he was not asked whether or not he signed an affidavit for search warrant. The record fails to show where this issue was raised in the lower court. The records of the justice of the peace issuing the warrant would have no doubt disclosed the true situation, but such justice of the peace was not called as a witness. The fact is, the record discloses that the purpose for which the affidavit and the search warrant were introduced into evidence by the defendant was on account of the alleged insufficiency of the description contained therein of the property searched, as well as the alleged irregularity in the return to the warrant, already discussed.

This court in many cases has held that alleged errors occurring during the progress of a trial, and not properly raised and presented in the court below, will not be considered on appeal. See Witzel v. State, 89 Okla. Cr. 142, 205 P. 2d 1173; Nowlin v. State, 65 Okla. Cr. 165, 83 P. 2d 601; Kennamer v. State, 59 Okla. Cr. 146, 57 P. 2d 646.

We may further repeat, in connection with the above point, that the defendant had the burden at hearing on motion to suppress the evidence of showing the invalidity of the search, and failed to examine the officer making the search, whom he offered as a witness, and failed to offer the evidence of the justice of the peace issuing the warrant, and for such additional reasons, .cannot complain of the action of the court in overruling his motion to suppress.

Counsel also contend that the description in the search warrant is so indefinite and uncertain as to render the warrant void. ·

The description in the search warrant reads: "* * * in the 11 rooms in a two story brick building used by him as a business and residence located on east 25 feet lot 4 and west 25 feet lot 5, block 83 Original Town of Okmulgee, Oklahoma, Okmulgee County, * * *."

Counsel state that the description "is not that certain description that would enable an officer seeking to execute a search warrant to locate the place without help from any other source.· It directs the searching of two different places." There is no complaint that the building in question was not located on the lot numbers and the block number set out. Police Chief Hill testified that the description was correct, and he testified that there was a fish market and radio shop down stairs, and that the 11 rooms leased by defendant for residence were located upstairs. The defendant in testimony given on motion to suppress testified as to location of his rooms substantially as Officer Hill.

It is true that the warrant failed to state that the 11-room residence of Bill Young was located on the second floor of the two story brick building located on the lots and block in question, but the search was limited to the 11 rooms. There was but one such apartment in the building, and located upstairs. The officer could have no difficulty in locating such residence within the building. It is true that he might have to use more of his senses than ordinarily, as where the rooms would be numbered and so described, nevertheless, a glance at the down stairs fish market and radio shop would at once refute the idea that the 11 rooms could be located there, so that an ascension of the stairs to the second floor would be the only way to the only residence within the

building, and a glance would show on ascension of stairs that there being but 11 rooms upstairs, that this was the correct place to be searched.

In the recent case of McCarthy v. State, 91 Okla. Cr. 294, 218 P. 2d 397, 398, this court said:

"An officer serving a search warrant may refer to maps, plats, etc., to obtain general information as to the general location of a piece of property, the particular location of which is specifically described in the warrant; and he may rely on his own personal knowledge; and he may call upon his knowledge and understanding in interpreting abbreviations in a specific description and resort to such aids will not render the search invalid where the property searched was that described in the warrant, and the property could be located from the description contained in the search warrant."

We conclude that the description complained of, while not a perfect description, was sufficient to meet the requirements of the above rule, and that the trial court did not err in overruling the motion to suppress.

On trial the state offered the evidence of three witnesses and proved that defendant's residence was a place of public resort and bore the reputation in the community as being a place where intoxicating liquors might be obtained. It was proven that the officers who searched defendant's rooms on February 17, 1950, obtained two pints of tax-paid whiskey, two half pints of tax-paid whiskey, and two pints of tax-paid gin.

The defendant did not testify, and offered no evidence.

The judgment and sentence appealed from is affirmed.

BRETT, P. J., and JONES, J., concur.