## Commonwealth v. Cabey

*A. Joseph Rieffel,* for Commonwealth.

*Sarah Duffy,* for defendant.

LEFEVER, J., April 30, 1963.—On April 12, 1961, at about 7:30 or 7:40 in the evening, two or three men came to the kitchen door of the combined residence and law office of Melvin Fisher, Esquire, at the northeast corner of Lexington and Ryan Avenues, Philadelphia. Defendant Cabey was allegedly one of those men. They rang the bell. The maid, Charlie Maud Spann, went

to the door. The men informed her that they were clients of Mr. Fisher and wished to see him. When the maid informed them that he was not at home, they tendered a written message. When she "cracked the door" to receive the message, they pushed their way in, put a gun to her head, took her to the nursery, tied her up and awaited the return of the Fisher family.

When Mr. and Mrs. Fisher and their 15-year old daughter came home about 10:30 p.m., they were roughly greeted by three masked men. These men bound them and placed them in a darkened room. They demanded money of Fisher. When he was unable to meet their demand, they beat him and kneed him, causing injuries which hospitalized him for eight weeks with a herniated intervertebral disk. Finally, with brandished revolvers, they threatened that unless Fisher produced money immediately, they would kill the two-year old child and thereafter successively, at five minute intervals, would kill the 15-year old daughter, Mrs. Fisher, the maid and then Fisher. At this point, Fisher burst into hysterical screams and the intruders departed.

Eventually the Fishers struggled out of their bonds. They immediately called the police. Mrs. Spann promptly identified defendant Cabey from photographs supplied by the detectives who responded to the call. Defendant was arrested. She identified him in the police lineup. He was indicted and tried three times.

At the first two trials, the jury disagreed and was discharged. At the third trial, the jury found defendant guilty on bills 1003, 1004, 1005 and 1006. Thereafter, defendant filed motions for new trial and arrest of judgment upon the usual grounds. Subsequently, his counsel filed 15 pages of additional reasons for these motions and a 52-page brief in support thereof. After consideration of the briefs and oral argument, we denied the motions. A presentence investigation and

psychiatric examination were requested and reports were furnished. Defendant was then sentenced. Thereafter, defendant filed an appeal to the Superior Court. Hence, this opinion.

Notwithstanding the multitude of reasons and the voluminous brief in support of her motions, it would appear that counsel for defendant relies chiefly on two points: (1) that there was insufficient identification of defendant; (2) that the admission into evidence of defendant's gun was error.

## 1. Identification of Defendant

Charlie Maud Spann picked defendant out of a book of photographs presented to her by the detectives shortly after the crime. She informed them that defendant was one of the men who appeared at the back door of the Fisher home, pushed their way into the house, and tied her up. She identified defendant in a police lineup on the next day. She made positive, absolute and unequivocal identification of defendant from the witness stand during the trial. This identification was based upon her looking directly at the unmasked intruders, as they faced her under an electric light on the porch, while they sought admission to the house. This was the only identification, as the burglars were masked when the Fishers arrived. However, Mrs. Spann's identification remained unshaken by cross examination and uncontradicted, except indirectly by certain of the alibi witnesses.

Identification of defendant is a question of fact. The determination of the facts is the function of the jury. The jury was properly charged that the burden of proving all essential facts, including identification, rested with the Commonwealth and that defendant was deemed innocent until proved guilty beyond reasonable doubt. The jury's verdict resolves the question of identification.

## 2. Admission into Evidence of the Gun

Since the decision of the Supreme Court of the United States in Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, defendants, on the slightest pretext, complain of "unreasonable search and seizure". Although the crime and the search and seizure in question occurred several weeks before the Mapp decision, defendant has grasped at this decision as the last straw of hope for his release from responsibility and imprisonment therefor.

The legality of the search and seizure of the gun in the instant case is not free from doubt. This is evidenced by the fact that President Judge Alessandroni refused to admit the gun into evidence in the first jury trial; Judge Trembath admitted it in the second jury trial; President Judge Hagan refused to admit it in the trial of a collateral phase of the same crime; President Judge Alessandroni, sitting as motion judge, refused to suppress the gun prior to the instant trial; Judge Guerin, as motion judge, left the matter to the discretion of the trial judge; and, finally, Judge Lefever, the trial judge in the instant case, admitted the gun.

The search and seizure in this case is a sad example of shoddy police work. Defendant had been identified from his photograph and in the police lineup as one of the participants in this crime. He was in custody of the police. To obtain a search warrant would have been a simple task. Nonetheless, the detectives went to the home of defendant's wife and searched the garage where the furniture owned by defendant and his wife was stored, without going to the trouble of obtaining a search warrant.

It is undisputed that defendant's wife gave the detectives permission to search the garage of defendant's employer where the furniture owned by defendant and his wife was stored. In fact, she gave the detectives

the key thereto. The detectives telephoned the owner of the garage and the latter was present when they entered and searched. The owner stated that defendant and his wife jointly leased the garage from him. The detectives testified that the garage contained many letters and bills addressed to Mr. and Mrs. Cabey. The furniture therein belonged to them. The weapon, a .38 caliber revolver, was found by the detectives, wrapped in newspaper, in a washing machine in the garage. Prosecutor Fisher identified this weapon as the revolver which was pointed at his head during the tense moments of the robbery. Finally, the detectives testified that when confronted with the gun, defendant admitted that it was his.

It is well settled that a search without a warrant is reasonable if conducted with the voluntary consent of the person lawfully in possession of the property searched: United States v. Eldridge, 302 F. 2d 463 (C.C.A. 4th, 1962). However, there is a divergence of views expressed in the cases as to whether a wife has the power and right to grant permission to law officers to search property owned or used jointly by her and her husband. The better view is that the consent of the wife is sufficient to validate the search without a warrant. See 36 Temple Law Quarterly 95 (1962).

In State v. Cairo, 74 R.I. 377, 60 A. 2d 841, the officers searched defendant's house with the consent of his wife. The court held this search was valid, stating:

". . . As a joint owner . . . Mrs. Cairo was possessed of an undivided interest therein, and in her own right as an occupant could undoubtedly give permission to search the house, or at least the cellar thereof, which was used by her in common with members of a different family.

"Therefore, the question as to whether Mrs. Cairo could give such permission as agent of her husband, so as to bind him by her action, is not involved in this

case because there is evidence that *in granting permission to make the search complained of she was not acting as agent for her husband but in her own right as a joint owner and occupant of the premises."* (Italics supplied.)

In Jones v. State, 83 Okla. Crim. 358, 177 P. 2d 148, the court stated:

"The contention that the search of the Higgins home was illegal and the property obtained in the search inadmissible in evidence is without merit. John Higgins, the head of the household and the owner of the house, according to the evidence gave the officers permission to make the search. The burden is upon the party alleging the invalidity of a search to show that the same is illegal."

In State v. Broadhurst, 184 Ore. 178, 196 P. 2d 407, the Court stated:

". . . the home in which Dr. Broadhurst resided was owned by him, but about a year before his death he gave its use and occupancy to the Adamses. They defrayed all of the household expenses and he was their guest. . . .

"Dr. and Mrs. Adams needed no search warrant to justify them in searching their own home, nor did they need a search warrant to justify them in inviting to their home any guests, even though the latter were police officers."

In People v. Carter, 48 Cal. 2d 737, 312 P. 2d 665, the court stated:

"When the husband is absent from the home, it is the wife who controls the premises, the ordinary household property, the family automobile, and with her husband's tacit consent determines who shall and who shall not enter the house on business or pleasure and what property they may take away with them. Cf. People v. Dominguez, 144 Cal. App. 2d 63, 65, 300 P.

2d 194. When the usual amicable relations exist between husband and wife (cf. Kelley v. State, 184 Tenn. 143, 197 S.W. 2d 545,546), and the property seized is of a kind over which the wife normally exercises as much control as the husband, it is reasonable to conclude that she is in a position to consent to a search and seizure of property in their home. If Mrs. Carter freely consented to the removal of defendant's property, there was no unreasonable search or seizure."

In the recent case of Commonwealth v. Wright, 411 Pa. 81 (April 16, 1963), the suppression of evidence was sustained because the consent of defendant's wife was obtained through misrepresentation, duress and coercion. However, the court clearly implied that the wife had power to consent, stating through Mr. Justice Eagen:

". . . It is established beyond argument that such consent to be valid must be unequivocal, specific and voluntarily given without the presence of duress or coercion, actual or implied . . ."

In the instant case there was no evidence of misrepresentation, coercion or duress in the search and seizure. Per contra, defendant's wife expressly consented to the search and to that end gave the detectives the key to the garage where the gun was found.

In fairness, it is to be noted that in Simmons v. State, 94 Okla. Crim. 18, 229 P. 2d 615, where the wife failed to object to the search, the evidence was suppressed. Likewise, in Kelley v. State, 184 Tenn. 143, 197 S.W. 2d 545, where the wife, while angry with her husband, permitted the search, the evidence was suppressed. So also the evidence was suppressed in Dalton v. State, 230 Ind. 626, 105 N.E. 2d 509, and in Cofer v. United States, 37 F. 2d 677 (C.C.A. 5th). Cf. Amos v. United States, 255 U.S. 313, 317.

After careful consideration of the cited cases, the reasoning advanced therein, and the language of our

Supreme Court in Commonwealth v. Wright, supra, we have come to the conclusion that defendant's wife in the instant case had the right and power to consent to the search which was made. According to the landlord, she and defendant jointly leased the garage. As co-lessees, she and defendant had equal right to enter or occupy the demised premises. A fortiori, she had the right to permit others to enter, occupy or search these premises.

In Commonwealth v. Cockfield, 411 Pa. 71 (April 16, 1963), the Pennsylvania Supreme Court reviewed the law of search and seizure in the light of Mapp v. Ohio, supra. Speaking per Mr. Justice Benjamin R. Jones, the court stated:

"The absence of a search warrant cannot *per se* be equated with 'unreasonableness' of a search. The United States Supreme Court in U.S. v. Rabinowitz, 339 U.S. 56, 65, 66, 70 S. Ct. 430, stated: 'The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances —the total atmosphere of the case.' . . . The fact that the police officers might have had the opportunity to secure a search warrant does not detract from the 'reasonableness' of the instant search if the 'totality of the facts' surrounding the search and seizure were reasonable and, particularly, if the search and seizure were *incidental* to the valid arrest.

" 'Incidental', in its pertinent meaning, refers to that which follows as an 'incident', i.e. 'an event of accessory or subordinate character' [The Oxford English Dictionary, Vol. 5, p. 152] In our view, the search and seizure of the contents of Cockfield's automobile were clearly 'incidental' to the arrest and the one logically followed the other. The time which elapsed between the time of the arrest and the time of the search does not destroy the character of the search as inciden-

tal to the arrest. The search and seizure flowed naturally from and were part and parcel of the normal and logical consequences of the arrest. Had the police officers not searched this automobile and seized this gasoline can and tissue they would have been derelict in their duties. Their actions did not constitute an unlawful or unconstitutional invasion of the right of privacy of Cockfield and, viewed under all the circumstances presented on the instant record, the search and seizure were clearly 'reasonable' in nature and 'incidental' to the valid arrest."

In Commonwealth v. Bosurgi, 411 Pa. 56, also decided April 16, 1963, Mr. Justice Benjamin R. Jones, speaking for the Court, stated:

"In passing upon the 'reasonableness' of a search and seizure, a preliminary, and most important, question is whether *Mapp* requires that state courts determine the 'reasonableness' of such search and seizure in accordance with federal or state standards. To that question *Mapp* gives no direct answer. However, a study of *Mapp* would indicate that, at least by implication, state courts are still free to apply their own, rather than the federal, criteria of 'reasonableness'.

"The 'reasonableness' of a search and seizure must be determined on an ad hoc basis, i.e. on the facts and the circumstances of each particular case. In U.S. v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 434, the Court said: 'What is a reasonable search and seizure is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case '[citing a case].' See also: Commonwealth v. Hunsinger, 89 Pa. Superior Ct. 238, 241, aff'd. 290 Pa. 185, 138 A. 2d 683; Commonwealth v. Richards, supra, p. 43."

In Commonwealth v. Richards, 198 Superior Ct. 39, the Superior Court also reviewed the law of Pennsylvania in the light of Mapp v. Ohio, supra. The court, speaking per President Judge Rhodes, stated at page 42, et seq.,:

"The decision in Mapp v. Ohio, supra, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, must be read and interpreted in the light of the actual holding therein of the Supreme Court of the United States. . . . The Mapp decision did not, as we interpret it, preclude judicial determination of what constitutes a reasonable search and seizure under all the circumstances. Cf. People v. Tyler, 14 Cal. Rptr. 610, 613 (1961) ; State v. Valentin, 36 N.J. 41, 174 A.2d 737, 738 (1961). As we view it, the Mapp decision went no further than to hold that where the search and seizure were unreasonable under all the circumstances, evidence obtained thereunder must, under the Fourteenth Amendment, be excluded in state criminal prosecutions. Not all searches and seizures are prohibited, those which are reasonable are not being forbidden. 79 C.J.S., Searches and Seizures, §8, p. 786.

". . . In Pennsylvania 'Whether search and seizure is or is not unreasonable must be determined from the facts in each particular case.' Com. v. Hunsinger, 89 Pa. Superior Ct. 238, 241; affirmed 290 Pa. 185, 138 A. 683. 'What is "unreasonable" is left to judicial determination.'

"When we apply the test of 'totality of facts' to the present appeal, it is clear that the search and seizure by the narcotics squad officers were not unreasonable. There was no invasion of defendant's constitutionally protected right to privacy."

Applying these precepts to the instant case, the search and seizure were not illegal. We do not approve the method of search and seizure used in this case.

When time and opportunity are available, a warrant should be obtained before the search. However, in view of defendant's recent arrest, and the other facts of this case, ". . . the search and seizure were clearly 'reasonable' in nature and 'incidental' to the valid arrest." Moreover, "When we apply the test of 'totality of facts' . . . it is clear that the search and seizure by the officers were not unreasonable. There was no invasion of defendant's constitutionally protected right to privacy." The permission granted the officers by defendant's wife to search the garage, to which she had the same right of entry and occupancy as defendant, fortify this conclusion. It follows that the trial judge did not err in admitting the gun into evidence.

### 3. Other Reasons Advanced by Defendant

Most of the other arguments put forward by defendant's counsel in her lengthy brief and in her oral argument were directed to the interpretation of the evidence. The jury heard these arguments and was not persuaded. Such arguments have no place in support of a motion for a new trial or a motion in arrest of judgment.

Counsel in her brief has quoted extensively from the record of the preliminary hearing and the previous trials, despite the fact that these portions of the records of the other trials were not presented at the trial of the instant case. Defendant's counsel was fully aware of these records, but did not see fit to confront Mrs. Spann with them at this trial. It is not proper for her to make reference to them in support of her present motions.

Counsel for defendant is emphatic in her argument with respect to the discrepancy in Mrs. Spann's testimony at the various trials as to the time the intruders arrived at the Fisher home. The trial judge, in his charge, summarized the position of the defendant and

the Commonwealth with respect to this and then stated (N. T. p. 310) :

"There has been a great deal said about time in this case, and I am sure you are all conscious of the fact that time is not an exact thing. Some people don't carry watches. They may vary in time estimates 10 or 15 minutes or several hours. The longer an event is away from the testimony, the more it can vary. So you have to apply your knowledge of life, and so forth, to time in these estimates which you heard."

The verdict indicates that the jury believed the testimony of Mrs. Spann in the instant trial that the intruders arrived at the Fisher home at about 7:30 or 7:40 p.m.

Defendant's counsel complains of a myriad of rulings by the trial judge, errors in his charge, and other errors. Suffice it is to say that we have carefully examined the entire record in this case, the charge of the trial judge, the reasons and additional reasons given in support of the motions for new trial and arrest of judgment and the briefs of counsel. We are satisfied that defendant was given a fair trial; that the evidence was fairly presented; that the jury was fully and properly instructed on the law; and that no material errors were made at the trial.

We conclude this opinion with the language of our Supreme Court in Commonwealth v. Bosurgi, supra:

". . .In our zeal to protect and preserve for the accused every constitutional right to which he is entitled we too often forget and neglect to preserve the rights of society which, too, are entitled to consideration.

" 'The maintenance of a proper balance between the right of the individual to privacy and that of society in the apprehension of crime does not require a suppression of the evidence as obtained by unreasonable search and seizure in this case. . . .' "

Accordingly, on December 28, 1962, we entered an order denying defendant's motions for new trial and for arrest of judgment.